SIDERS *v.* SOUTHERN MATTRESS Co.

5-3759                         398 S. W. 2d 901

Opinion delivered February 14, 1966.

*O. W. Pete Wiggins,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

JIM JOHNSON, Justice. This workmen's compensation proceeding was brought under the hernia statute, Ark. Stat. Ann. § 81-1313 (e) (Repl. 1960).

Appellant Jess Siders was employed by Southern Mattress Company, one of the appellees. On the morning of January 7, 1964, appellant attempted to remove a frame from a pile of box springs and frames that was stacked quite high. It was stuck, appellant gave it a hard jerk, and felt a pain in his left side. He rubbed the lower part of his stomach and told a co-worker that he felt like he had torn something loose. They continued their work until noon, appellant still complaining. At noon appellant told his supervisor that he was in pain and going to a doctor. (Appellant testified that he told his supervisor about jerking the frame and the following pain, but the supervisor said that if so, he didn't hear it or had his mind elsewhere on the business. He did tell appellant that if he was not able to work, he did not want appellant to work.) Appellant went home and at 1:00 that day went to a doctor who examined him thoroughly, looking, *inter alia,* for a hernia. In checking the prostate, the doctor apparently stirred up a latent prostate infection which erupted into epididymitis. The doctor saw him twice thereafter and because of appellant's corpulence and swelling from the infection, had difficulty examining him. Appellant soon changed doctors. Some weeks later, at his second doctor's suggestion, appellant went back to light work. When the fever and painful swelling had subsided, this doctor sent appellant to a surgeon on February 29th who located the hernia and advised surgery. The following Monday appellant called his supervisor, who in turn talked to the surgeon and the company doctor. The company doctor was a stockholder in Southern Mattress Company and never examined appellant. The company doctor told the supervisor to tell the surgeon to perform the surgery and for the supervisor to "turn it over to the insurance company."

After the successful surgery, appellant's claim for workmen's compensation, and testimony in support thereof, was heard by the referee. His claim has been controverted throughout, appellees contending that appellant did not suffer an accidental injury arising out of and in the course of his employment, or that if he did receive an accidental injury, he failed to comply with the special provisions of the workmen's compensation law relating to hernias.

The referee found that appellant suffered an accidental injury arising out of his employment and had complied with all the provisions of the hernia statute, pointing out that the Act "does not require that the physician give a diagnosis of a hernia immediately." On appeal to the full commission, without the benefit of additional evidence, the commission adopted the referee's statement of facts. The commission's opinion concluded as follows:

> "Claimant did mention to his employer that his stomach was hurting, but, according to the employer, claimant did not give any history of hurting himself on the job. Claimant went to Dr. Wenger that same day and Dr. Wenger's testimony is that 'I have no record of any history of any specific injury . . . .' Claimant's failure to tell his employer of an on-the-job accident plus his failure to tell Dr. Wenger of any specific incident raises a serious question as to whether claimant in fact suffered an injury as alleged."

Reversing the referee, the commission found that claimant failed to establish by a preponderance of the evidence that he sustained a compensable hernia. The ruling of the commission was upheld by the circuit court, from whence comes this appeal.

The commission imposed a heavier burden on appellant than the law calls for. Just as the Act does not require an immediate diagnosis, it also does not require

that the claimant insist that the doctor's history contain the gory details of the occurrence.

The five criteria which must be met to fall within the strict terms of the hernia statute [§ 81-1313(e)] are as follows:

"(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

(2) That there was severe pain in the hernial region;

(3) That such pain caused the employee to cease work immediately;

(4) That notice of the occurrence was given to the employer within forty-eight (48) hours thereafter;

(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within forty-eight (48) hours after such occurrence."

Of these five, the commission appears to have denied compensation based upon a failure to comply with the fourth element, notice of the occurrence to the employer. As we have seen, the commission attempted to buttress its conclusion with an empty sandbag, the absence of a complete history of the occurrence in the doctor's records. Obviously the doctor's records are immaterial here on the question of notice to the employer. The evidence on notice boils down to the testimony of the employer (supervisor) and claimant (appellant). On this point, the supervisor's pertinent testimony was as follows:

"On January 7th, as far as I know, I was in the office right close to 12:00 o'clock. I came out

and met him there at the finishing room door. He said he was hurting, he was going home and go to a doctor. I said, "O.K." There might be some misunderstanding or something but I never did hear that he was hurt on the job. It wasn't reported to me that he was hurt on the job."

On cross-examination the supervisor testified:

"I met him at the door. I knew he was fixing to leave then. He was coming to tell me that he was going to a doctor. He said he was hurting and he said he was going to see a doctor. I do not recall where he was hurting. I believe he said his stomach was hurting. I don't remember him saying that he thought he had torn something loose in the lower part of his stomach. If he did tell me, I misunderstood him. I was pretty busy and had a lot of things on my mind. It's pretty rushing some time."

Appellant testified that when he told his supervisor about the pain, he also told him about the occurrence (the jerk) which brought on the pain, just as he had told his co-worker.

Appellant has established a prima facie case. From all the circumstances, there is no question but that the employer had timely and proper notice of the occurrence that caused the hernia. There is no substantial evidence to the contrary. Appellant is not required to give notice that he has a hernia—he is not a doctor—the statute merely requires that appellant give notice of the occurrence which results in a hernia. *Clark* v. *Ottenheimer Bros.*, 229 Ark. 383, 314 S. W. 2d 497; *McMurtry* v. *Marshall Model Market*, 237 Ark. 11, 371 S. W. 2d 4.

On the case as a whole, "if the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the

commission's refusal to make an award." *Hall* v. *Pittman Constr. Co.*, 235 Ark. 104, 357 S. W. 2d 263.

Reversed.

GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, J., dissenting. It is apparent from the record and from the Commission's opinion that the Commission was not convinced by the proof that the claimant suffered the severe strain and pain that the statute requires. Dr. Wenger, who saw Siders on the day of the asserted accident, had no record of any such incident as the claimant later described in his testimony. If the severe strain and pain had occurred it is hardly possible either that the claimant failed to mention it to his doctor or that the doctor failed to include it in his case history. It is clear that the Commission, which observed the witnesses as they testified, did not believe the claimant's testimony. In my opinion the majority are usurping the function of the Commission by passing upon issues of credibility and by drawing inferences of fact. I would affirm the judgment.