### HARRIS CATTLE COMPANY *v.*
### Hosea PARKER

73-257                                              506 S.W. 2d 118

### Opinion delivered March 11, 1974

*Laser, Sharp, Haley, Young & Boswell*, P.A., for appellant.

*Kenneth C. Coffelt*, for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case in which the employer, Harris Cattle Company, appeals from a circuit court judgment affirming

an award made by the Workmen's Compensation Commission to Hosea Parker, the injured employee. The question before the Commission was whether Parker's disability associated with two "bulging" intervertebral discs was caused by injuries he sustained in the course of his employment. The Commission found for Parker and awarded compensation and medical benefits to be continued until the end of the healing period, still to be determined, and the award of the Commission was affirmed by the circuit court. On appeal to this court the cattle company contends that there was no substantial evidence to support the award of the Commission, because Parker failed to prove by medical evidence a causal relation between his disability and injury sustained in the course of his employment.

Parker testified that he was 64 years of age and had worked for the Harris Cattle Company since February 16, 1969, doing farm work and working with cattle. He said that in August, 1971, he was injured while engaged in hauling hay for the cattle company. He said that on that date he was engaged in unloading hay and his back was injured when he was pinned between a hay loader and the cab of a truck which had been driven, by a fellow-employee, too close to the hay loader. He said he remained pinned between the two vehicles for approximately 15 minutes before other employees were able to extricate him. He said his foreman, Mr. Moore, arrived on the scene soon after the accident and offered to send him to a doctor, but that he thought he would soon be all right and so advised his foreman. He said he continued on the job with the same employer but the pain in his back and legs continued to grow worse until on the morning of December 14 he had difficulty getting out of bed and got in touch with his foreman and was taken to the University Hospital. He said he was released from the hospital on January 6, 1972; that he attempted to go back to work on January 18 but reinjured his back in February when lifting a bale of hay and had to go back to the hospital. He said Dr. Don Williams performed an operation on his back and that he is still under the care of the doctors at the University Hospital. He said he has not been able to work since February 25; that he is still having difficulty with his back and both legs and has been advised by the doctors that he

needs additional surgery. Parker testified that his employer, Mr. Harris, paid him $42.90 a week from February, 1972, until September 18, 1972, when Mr. Harris told him that the insurance people had told him to pay no more. He said that his compensation payments were started in February when he actually fell out after jerking his back and reinjuring it in handling a bale of hay. He said that when he jerked his back on this occasion, his resulting pain was at the same spot in his back where it was injured when he was pinned between the truck and the loader and where he had been having the trouble with his back all along. He said that following the February injury Mr. Harris told him not to say anything to anyone from the insurance company about his injury in August.

Will Sanford, a fellow-employee, testified that he was working for Harris Cattle Company two or three years before Parker started working there. He said he did not actually witness the accident in August when Parker was injured because he did not arrive on the scene until after Parker had been released from between the truck and hay loader. He said he does not know how long Parker remained off from work, but that he does know Parker was not able to carry his part of the work after he did come back on the job following his August injury. He said he had to carry a part of Parker's work following the injury in August, but that prior to the injury Parker had helped him build fences and "put out" crossties without difficulty.

Charlie Moore testified that he was foreman for the Harris Cattle Company in August, 1971, and that Parker worked under his supervision. He said Parker was injured in August and while he was not an eyewitness to the accident, he arrived on the scene soon after it happened. He said Parker continued working with a truck on the day of his accident, but that the other employees did the work and Parker was just out there. He said Parker did help haul some hay following his injury in August and prior to his hospitalization in December, but that following the August accident Parker complained of his legs going to sleep. He said he took Parker to the hospital on December 14 and assisted him in getting into the building. Mr. Moore testified that he told the employer, Mr. Harris, that Parker was injured on the job in

the latter part of August and so far as he knows, no one connected with the Harris Cattle Company ever denied that Parker sustained his injury while on the job.

On cross-examination Mr. Moore testified that following the August accident, Parker continued to complain of pain in his back and legs, but that he did not take Parker to the hospital until he was called and told that Parker couldn't move. He said that Parker did not ask him to take him to the hospital until December and that as far as he knows, he did not see a doctor until then. He said that an insurance company representative contacted him in regard to the matter and took a tape recording from him. He said he told the insurance representative exactly what he knew about the accident, and that the company knew Parker got hurt in August when he got pinned against the loader.

Several medical reports were introduced into evidence by Parker without objection. A report from the Department of Neurosurgery of the University of Arkansas Medical Center over the typed names of Drs. S. Flanigan and Ron Williams shows that Parker was examined on December 15, 1971; that he had low back pain radiating to the right hip and thigh; that the pain was increased by coughing and that Parker had obtained very little relief from conservative therapy. Under the headings of "Hospital Course" and "Final Diagnosis" appear the following:

> "The patient was admitted to the Neurosurgery Service on 12-30-71 and was maintained at bedrest and alangesics. [sic] On 1-4-72, a lumbar myelogram was done without difficulty. There was a large defect on the right at the L-4, L-5 interspace with a smaller defect on the left. The patient was advised that he probably had a herniated nucleus pulposus and operation was advised. He did not wish an operation at this time; however, he preferred to be discharged. He had no difficulty following the myelogram, and was discharged on 1-5-72.
>
> Herniated nucleus pulposus."

The subsequent medical reports reveal that on March 7, 1972, bulging discs were surgically removed from the L-3-4

and L-4-5 vertebral interspaces; that Parker's pain was relieved by the surgery and he was discharged from the hospital on March 15, 1972.

The uncontradicted testimony of Parker and his witnesses constitutes substantial evidence that Parker sustained two accidental injuries to the same area of his back while in the course of his employment, and that pain in the injured area, associated with numbness in the legs, continued, and grew progressively worse, from the date of injury until it was relieved by the surgical removal of two ruptured or "bulging" discs.

The appellant does not seriously question the occurrence of the accidents or the extent of Parker's disability. The appellant simply argues, in effect, that causal relation between accidental injury and physical disability must be affirmatively established by medical evidence and that Parker failed to make such proof in this case. There is substantial evidence of Parker's injuries and his disability following the injuries. The existence and removal of the bulging discs are not questioned. The medical reports were offered in evidence without objection and without cross-examination. It is true that the medical reports do not say that Parker sustained his bulging discs when he was pinned between a hay loader and a truck in August, 1971, or when he lifted a bale of hay in February, 1972. There is substantial evidence that he suffered pain and disability following both incidents, and that the pain was relieved by the removal of two bulging discs in March, 1972. The medical reports do not say that the bulging discs and associated disability were not caused by the accidental injuries as testified to by Parker and his lay witnesses. There is substantial evidence from the testimony of Parker as well as others who were working in the field with him in August, 1971, including the testimony of his foreman, that he did sustain an injury in August, 1971, and complained of pain in his back and legs from the date of that injury until he was unable to get out of bed in December, 1971. The pain persisted and continued to grow worse until he finally underwent surgery in March, 1972, when the offending discs were removed and the pain subsided.

We deem it unnecessary to extend this opinion by quoting at length from prior opinions. The burden is, of course, on the claimant to prove a causal relation between his condition and his employment. *Holland* v. *Malvern Sand & Gravel Co.*, 237 Ark. 635, 374 S.W.2d 822. We have previously indicated, and now so hold, that it is not essential to an award of benefits in every workmen's compensation case that the causal relation between the accident and disability or condition be established or proven by medical evidence or testimony. We are of the opinion that each case should be determined on its own facts and merits as to whether medical evidence is necessary or essential in establishing causal relation and in the case now before us we conclude that it was not. In *Sneed* v. *Colson Corp.*, 254 Ark. 1048, 497 S.W.2d 673, we said:

> "The appellee contends that expert medical testimony is essential to establish causal relationship of the injury to the cervical condition suffered by Mr. Sneed and seems to argue that the Commission must rely on medical evidence only for such purpose. * * *
>
> Certainly we recognize that expert medical opinion and evaluation would be desirable and perhaps beneficial to the Commission in most any type of case where physical injury is involved. Indeed it is just common sense that medical evidence may be essential to a determination of causal relation between some types of injury and some types of physical conditions following such injuries. We also recognize that expert medical testimony is expensive to an injured workman and is not essential to the exclusion of all other evidence in establishing a causal relation between some types of injury and some types of conditions following such injuries."

In *Hall* v. *Pittman Constr. Co.*, 235 Ark. 104, 357 S.W.2d 263, we said:

> "Cases such as this one present problems that gradually and almost imperceptibly progress from issues of law to issues of fact. If the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the

employee's condition, we may say without hesitation that there is no substantial evidence to sustain the commission's refusal to make an award. *Clark* v. *Ottenheimer Bros.*, 229 Ark. 383, 314 S.W.2d 497. But if the disability does not manifest itself until many months after the accident, so that reasonable men might disagree about the existence of a causal connection between the accident and the disability, the issue becomes one of fact upon which the commission's conclusion is controlling. *Kivett* v. *Redmond Co.*, 234 Ark. 855, 355 S.W.2d 172.''

See also *Eddington* v. *City Electric Co.*, 237 Ark. 804, 376 S.W.2d 550; *Siders* v. *Southern Mattress Co.*, 240 Ark. 267, 398 S.W.2d 901.

The 1969 Illinois case of *Gubser* v. *Industrial Comm'n*, 248 N.E.2d 75, was a compensation case with facts very similar to those in the case before us. In affirming an award by the Industrial Commission in that case, the Supreme Court of Illinois said:

"This court's holdings are that it is primarily the function of the Industrial Commission to resolve disputed questions of fact, including those of causal connection and the extent of disability."

Then after reviewing the claimant-appellee's testimony as to his continued pain from the occurrence of the accident up to the medical diagnosis, the court said:

"No testimony was presented by the appellant or any evidence other than the two medical reports, to meet what would be a natural inference in support of the appellee's claim following his testimony and consideration of the reports. * * * The reports the appellant did offer contained nothing as to the causation of the appellee's back condition and were not inconsistent with the appellee's testimony and medical reports..

* * *

Contrary to the appellant's position, it was not necessary that causation be established through the

testimony of a medical witness. Our observation in Union Starch & Refining Co. v. Industrial Com., 37 Ill. 2d 139, at 144, 224 N.E.2d 856, at 859, is pertinent: 'We know of no case requiring a doctor's testimony to establish causation and the extent of disability, especially where, as here, the record contains the company doctor's report and hospital records showing findings of the employee's personal physician which are consistent with the employee's testimony.' "

The Illinois Court then distinguished the case before it from its decision in a previous case where the testimony offered by the employer attributed the claimant's physical complaint to a non-traumatic degenerative process rather than to trauma sustained in employment.

The 1971 South Carolina case of *Arnold* v. *Benjamin Booth Co.*, 185 S.E.2d 830, was also a compensation case of back injury with facts very similar to those in the case at bar, except in *Arnold* the appellee-claimant offered no medical evidence at all. In affirming an award made by the Commission, the South Carolina Supreme Court applied the "reasonable inference" doctrine and stated as follows:

"Circumstantial evidence and lay testimony can be sufficient to support a finding of causal connection in a Workmen's Compensation case. Such evidence need not reach such a degree of certainty as to exclude every reasonable or possible conclusion other than that reached by the Commission. It is sufficient if the facts and circumstances proved give rise to a reasonable inference that there was a causal connection between the disability and the injury. Whether the absence of medical testimony is conclusive on the question of causation depends upon the particular facts and circumstances of the case. Mize v. Sangamo Electric Co., 251 S.C. 250, 161 S.E.2d 846."

See also *Rollins* v. *Wunda Weve Carpet Co.*, 177 S.E.2d 5.

We conclude that the Commission in the case at bar had a right to consider *all* the evidence before it in determining the causal relation between Parker's accidental injury and his

protruding discs. We further conclude that the Commission was justified in drawing a reasonable inference from all the evidence before it, that there was a causal connection between Mr. Parker's accidental injuries and disability and disc lesions found and removed by the doctors. We are of the opinion, therefore, that there is substantial evidence in the record before us to sustain the award of the Commission and that the judgment of the circuit court should be affirmed.

The judgment is affirmed.