Linda Carolyn Boyd CHAMBERS *v.*
JERRY'S DEPT. STORE, INC. et al

CA 79-350                                        599 S.W. 2d 448
Court of Appeals of Arkansas
Opinion delivered May 14, 1980
Released for publication June 4, 1980

*Brockman & Brockman*, by: *E. W. Brockman, Jr.*, for appellant.

*Chester C. Lowe, Jr.*, for appellees.

ERNIE E. WRIGHT, Chief Judge. This is an appeal from a decision of the Workers' Compensation Commission affirming the administrative law judge's decision appellant had failed to establish her back condition existing subsequent to June 10, 1977 was a result of the compensable injury she sustained on December 27, 1976, and denying any further workers' compensation benefits. Hearings were held before the administrative law judge in September, 1978 and March, 1979.

The appellant sustained an admitted compensable injury on December 27, 1976, in the course of her employment with the appellee, Jerry's Department Store, Inc., while helping move a metal sink base. She was thirty-one years old at the time of the injury. She received medical treatment shortly thereafter consisting of physical therapy and medication for

pain. As her condition did not improve, she was referred to Dr. Simpson, a neurosurgeon in Pine Bluff, and was hospitalized under his care on January 18, 1977. Dr. Simpson's medical history for the claimant showed she was in good health prior to the December 27, 1976 injury, and promptly thereafter began experiencing pain in her back and right leg. She had not had any serious back problem prior to the injury. Dr. Simpson's examination revealed tenderness over the L4-5 and 5S-1 of her back on the right side with pain going down into the right hip and leg. The doctor's initial impression was, "Possible herniated disc at L4-5 with upward herniation." A lumbar myelogram was performed on January 20, 1977, using an injection of 15 cc's of Pantopaque into the spinal subarchnoid space. The myelogram did not reveal a herniated disc, and Dr. Simpson's final diagnosis was musculoskeletal back pain. She was instructed not to engage in any strenuous exercises or lifting, stooping, bending or picking up any object heavier than five to ten pounds. On her first post hospitalization visit to Dr. Simpson on March 7, 1977, she was still having right hip pain. Her radicular pain had decreased. She had tenderness over the ischial spine with radiation around the side of the right hip. He recommended a vigorous exercise program and advised her unless she had some specific problem he would not need to see her further but she should call him in about a month or so. The claimant next saw Dr. Simpson on June 8, 1977, and was continuing to have back and right leg pain. She reported she was doing fairly well until Monday when she sat down on a couch and suddenly experienced back and right hip pain. Dr. Simpson found she did have decreased range in motion of her back because of right leg pain and pressure over the lower lumbar region. Dr. Simpson released the claimant for work in March, 1977, and she did work from March until November 7, 1977, at Gold's House of Fashion and later at Brandon Furniture. She has been unable to work since she was hospitalized November 8, 1977, under the care of Dr. Giles.

Claimant's testimony was that she had never had back trouble before but she experienced back and leg pain from the time of the injury, although she at times had partial remissions. She continued to take medication for pain as directed by Dr. Simpson until she first saw Dr. Giles. Her

condition grew worse and on September 12, 1977, she saw Dr. Giles, a Little Rock neurologist, and the medical history of the claimant as given to Dr. Giles reflected she experienced back pain while helping move a metal cabinet and sink on December 27, 1976. This was in keeping with the history given to Dr. Simpson. After returning to work her pain improved, but she experienced onset of left leg pain during the past two months prior to seeing Dr. Giles. Examination by Dr. Giles revealed marked tenderness over the peroneal nerve on the lateral aspect of the left leg. It was Dr. Giles' tentative view she had likely suffered an injured nerve from some blow to the calf of her leg and he recommended conservative treatment. On November 9, 1977, claimant returned to Dr. Giles with continued persistent back and leg pain which had become progressively worse over the past six weeks and was radiating from the hip down into the lateral part of the foot. She was admitted to the hospital and the myelogram revealed a large bulging disc at the L5-S1 interspace on the left side. Twenty-one cc's of dye, a larger than the usual amount, was injected to accomplish the myelogram because of the unusually large spinal canal. She was treated conservatively but continued to experience severe back and leg pain, and pain in both hips. Dr. Giles performed a lumbar laminectomy on the L5-S1 disc on January 6,1978. Subsequently when seen by Dr. Giles on February 20, 1978, she was still experiencing pain in her left hip as well as in her left posterior thigh, and was unable to perform recommended exercises. On March 21, 1978, she was again seen by Dr. Giles and complained of continuing pain in her back and leg. She was readmitted to the hospital on March 25, 1978, and a myelogram revealed a recurrence of the herniated disc at the L4-5 interspect for which she had the prior operation. She had a further operation on March 28, 1978, and an additional fragment of the disc was removed. Dr. Giles explained the confusion in the number reference to the vertebrae involved was because claimant has one vertebra more than normal, but it was the same disc involved at all times. Upon her return for a post operative visit on May 5, 1978, Dr. Giles found claimant was doing well but noted she had renewed back discomfort after sustaining a black eye, and abrasions and contuions about her face, body and arm as a result of being beaten by her husband. She was hospitalized and given bed rest, muscle relaxants and

analgesics. She rapidly improved and was discharged on May 8. On June 5, 1978, she was again seen by Dr. Giles and was still having back and leg pain but had improved by the use of a back brace. She was next evaluated on July 19, 1978, and found to have back and hip pain, but her leg pain had improved. She walked with a mild limp and had mild muscle spasms in the lumbosacral region.

Hearing was held before the administrative law judge on September 19, 1978, and it was stipulated the respondents had accepted the claim as compensable and had paid compensation and medical expenses. Claimant testified she was still experiencing pain in her lower back that goes down her left leg to her toes and also at times in the right leg.

Final hearing was had before the administrative law judge on March 29, 1979, when further medical reports and the deposition of Dr. Giles, taken subsequent to the first hearing, was received in evidence and Jim Chambers, former husband of the claimant, and the claimant testified. The testimony of Chambers, who was called as a witness by respondents, was that the parties were married August 11, 1977, and that about the last of May or the first week of June, 1977, they were on an outing together on Petit Jean Mountain, and while they were wading in a creek the claimant fell on a big rock and sustained a large bruise on her left hip. In answer to a question as to why he did not give this testimony at the prior hearing, he replied, "I felt I had been gouged in the divorce case, and I was going to get back· at her." The claimant denied any such incident and testified she was experiencing trouble with her back and legs both prior and subsequent to the outing the parties made to Petit Jean Mountain. There was no reference to any such fall in the report of Dr. Simpson incident to claimant's visit to him on June 8, 1977, nor was there any other evidence that any such fall occurred.

Dr. Giles was unable to testify as to the injury that caused the herniated disc, but in response to a question as to whether or not the lifting of the sink caused or contributed to the disability, he responded, "The condition that you have just described, I would say, there is an excellent possibility

that there was the incident which caused this lady's problems." He also testified he knew of no other incident that might have caused the disc rupture. He further testified, "I think the original injury could have some bearing on her present condition, based on the information given to me by you and the other counsel. I am not so sure that is what caused her present injury." He further stated that assuming she had an injury in December, 1976, the back or disc injury could get progressively worse without trauma and this is not unusual. Dr. Giles also testified that if there was not enough dye injected in the myelogram performed by Dr. Simpson, this would possibly explain the failure of the test to reveal a herniated disc at that time; that the lady is, "quite large and overweight," and it was only after she was placed in the semi-standing position and by use of a large amount of dye that he was able to see the large protruding mass into the dye column. He stated, "this was not visualized on the normal supine study." Some of the testimony of Dr. Giles was in response to a hypothetical question propounded by counsel for the appellees, and it is obvoius from Dr. Giles' answers to the lengthy hypothetical question that he was led to believe or assume that there was some kind of injury or incident that occurred to the claimant affecting her back subsequent to the December, 1976, admittedly compensable injury. However, we find no substantial proof is in the record of any injury to the claimant subsequent to the 1976 injury from which it can reasonably be inferred she received some further back injury. Dr. Giles was of the opinion the beating claimant received did not materially affect her residual disability.

The administriatve law judge, at the request of counsel for the appellees, issued a subpoena for Mr. Chambers for his attendance at the final hearing. Counsel for claimant by letter requested the judge to issue subpoenas for a number of witnesses to rebut the indicated testimony of Mr. Chambers. The judge refused to issue subpoenas for the witnesses requested by claimant stating, "unless I receive assurance that these individuals have a direct knowledge of the alleged occurrence at Petit Jean Mountain." At trial counsel for claimant objected to the refusal to issue subpoenas and stated he desired to call certan witnesses named in his letter for purposes going to the credibility of Mr. Chambers.

The judge also refused the request of counsel for claimant to allow questions to Mrs. Chambers as statements previously made to her by Chambers about what he would do about testifying.

The judge also refused claimant's request for subpoenas for witnesses for the final hearing who were expected to testify the claimant was not injured while working at the two places she worked subsequent to the 1976 injury. This evidence was intended to refute the inference in the hypothetical question counsel for appellees had propounded to Dr. Giles in a deposition taken subsequent to the first hearing. Counsel for appellant entered his objection in the record at the beginning of the final hearing.

For reversal appellant contends, (1) there is no substantial evidence to support the Commission's findings; (2) the primary injury having been shown every natural consequence that flows from the injury likewise arises out of the employment; and (3) the administrative law judge abused his discretion in not allowing appellant to introduce proof by witnesses from two places of employment showing appellant had not received injuries there.

It was the duty of the commission to draw every legitimate inference possible in favor of the claimant and to give her the benefit of the doubt in making the factual determination. *american Red Cross et al* v. *Wilson*, 257 Ark. 647, 519 S.W. 2d 60 (1975). As undisputed testimony of the claimant showed she was never free of back problems after the December, 1976 injury, and every medical examination verified continuing back problems each time claimant was seen by a physician, we cannot say the Commission followed the above established rule in evaluating the evidence. The decision of the administrative law judge, affirmed by the Commission, stated the isuse to be decided was "necessarily a medical question." This erroneous conclusion resulted in inadequate consideration of other facts in the record showing claimant's back problems originated with the injury, and while at times in partial remission, were continuous from the time of the injury. In *Harris Cattle Company* v. *Parker*, 256 Ark.

166, 506 S.W. 2d 118 (1974), involving a herniated disc, the court said:

> We have previously indicated, and now so hold, that it is not essential to award of benefits in every workmen's compensation case that the causal relation between the accident and disability or condition be established or proven by medical evidence or testimony. We are of the opinion that each case should be determined on its own facts and merits as to whether medical evidence is necessary or essential in establishing causal relation.

Unquestionably the medical evidence is important in the present case, but the language of the Commission and the record as a whole indicate too little importance was given to other evidence relevant to causation. The court pointed out in the *Harris, supra,* case:

> It is true that the medical reports do not say that Parker sustained his bulging discs when he was pinned between a hay loader and truck in August, 1971, or when he lifted a bale of hay in February, 1972. There is substantial evidence that he suffered pain and disability following both incidents, and that the pain was relieved by removal of two bulging discs in March, 1972. The medical reports do not say that the bulging discs and associated disability were not caused by the accidental injuries as testified to by Parker and his lay witnesses. There is substantial evidence from the testimony of Parker as well as others who were working in the field with him in August, 1971, including the testimony of his foreman, that he did sustain an injury in August, 1971, and complained of pain in his back and legs from the date of that injury until he was unable to get out of bed in December, 1971. The pain persisted and continued to grow worse until he finally underwent surgery in March, 1972, when the offending discs were removed and the pain subsided.

We conclude it was prejudicial error to refuse subpoenas at the request of appellant for witnesses who were expected to testify the claimant was not injured at the two places she

worked subsequent to the 1976 compensable injury, in view of the fact counsel for appellees framed a hypothetical question to Dr. Giles suggesting some other *causes* for her condition had occurred at places where appellant worked. No valid reason was given for the refusal and the proposed evidence was pertinent to questions raised by the appellees subsequent to the first hearing. Also, it was error to refuse subpoenas requested by appellant for witnesses expected to discredit the testimony of Mr. Chambers.

The case is reversed and remanded with directions appellant be permitted to produce the witnesses she was prevented from producing at the final hearing, and further evidence by the parties may be received as the Commission may direct.

NEWBERN, J., concurs.

DAVID NEWBERN, Judge, concurring. I agree with the result reached in this case, and I do not disagree with any statement made in the opinion. I would like, however, to emphasize the fact that, while it is entirely appropriate to point out the commissions' obligation to give the benefit of the doubt to the claimant where evidence conflicts, that rule is not the basis of the decision here. I fear that the lengthy recitation of testimony and the statement of the "benefit of doubt" rule might lead one to conclude we are ignoring the "substantial evidence" test. See *Johnson* v. *Valmac Industries*, 269 Ark. 626, 599 S.W. 2d 440 (Ark. App. 1980), which is handed down today.

We are not, I believe, saying there was no substantial evidence to support the commission's order. Rather, we reverse because of these errors committed by the administrative law judge whose decision was merely accepted by the commission: (1) apparent refusal to consider pertinent lay testimony; and (2) refusal to subpoena witnesses whose testimony would also have been pertinent.