Aubrey PITTMAN *v.* WYGAL TRUCKING PLANT and
SOUTHWESTERN NATIONAL INSURANCE
COMPANY

CA 85-266                                              700 S.W.2d 59

Court of Appeals of Arkansas
Division II
Opinion delivered November 27, 1985

*Guy Jones, Jr., P.A.*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for
appellees.

TOM GLAZE, Judge. Aubrey Pittman appeals from a decision of the full Commission which reversed the administrative law judge's award of benefits. The Commission held that appellant failed to prove by a preponderance of the evidence that complaints he developed several weeks after the accident arose out of his employment. For reversal, appellant contends that (1) the Commission erroneously applied the legal standard of absolute certainty under the guise of "reasonable medical certainty," and (2) the Commission's denial of benefits is not supported by substantial evidence. We reverse and remand.

Appellant, a fifty-nine-year-old truck driver, was injured on March 14, 1984, while driving through Arizona. A strong gust of wind blew his rig over on its left side. Appellant was struck on his left side by the body of the cab, and on his right side by his second driver, who was sitting in the passenger seat. Appellant was unconscious from between three to ten minutes. Upon regaining consciousness, he experienced severe pain in his right arm and leg. He was admitted to Flagstaff Medical Center on the day of the accident, and discharged March 16, 1984, with a diagnosis of cervical strain, cerebral concussion, and arthritis of the cervical spine.

Appellant returned to Arkansas and remained off work for three weeks. He had no problems during this period. Shortly after his return to work, he began having "blank-out spells." After making three cross-country trips, he was laid off because, according to the employer, insurance would not cover him. Following this layoff, appellant worked at a cemetery for about eight weeks, but he left when he felt he could no longer perform the work. He has not worked since.

Appellant did not consult a physician about his "blank-out spells" until September 1984. At that time, he complained of sudden confusion, disorientation, numbness of the right side of his face and right hand, and pain on the right side of his neck, radiating to his head. A CT scan detected that appellant's left ventricular system was larger than his right. An EEG showed mildly abnormal findings in the bifrontal and temporal regions, more prominent on the left. A cerebral arteriogram revealed an abnormal condition which resembled an aneurysm or a diverticulum of the right internal carotid artery at the point where the

artery enters the skull.

Before the administrative law judge, appellant contended he was temporarily, totally disabled as a result of the March 14th accident. Appellee contended that the condition was either preexisting or not causally related to the accident.

As his first point for reversal, appellant contends that the Commission erroneously applied the legal standard of absolute certainly under the guise of "reasonable medical certainty." The only medical testimony presented in this case is that of Dr. Robert Dickins, a neurosurgeon, who first saw appellant on October 2, 1984, over six months after the March 14th accident. The following are pertinent excerpts from Dr. Dickins' testimony regarding the cause of appellant's post-accident complaints:

> So it is possible that the things that he described to me were caused or related to the accident.
>
> * * *
>
> I would have to say that it is possible they were not related.
>
> * * *
>
> I am at somewhat of a disadvantage in making any absolute statement in that regard [*i.e.*, the degree of medical certainty that appellant's symptoms are related to the accident] because I have been uncertain as to the origin of the symptoms he has had.
>
> * * *
>
> Well, it's certainly possible and probable that his symptoms are related to the injury. But if you ask me if there is any other possible explanation I would have to say yes. . . .
>
> * * *
>
> Based on the history that's given to me, I would say that there's a probability that a majority of the symptoms he's describing to me are related to the accident.

The Commission described Dr. Dickins' opinion, that appellant's symptoms may be related to the accident, as a "best guess" and stated that guesswork was not an "appropriate basis" for

decision making. In reaching this conclusion, the Commission relied heavily on two medical malpractice cases, *Norland* v. *Washington General Hospital,* 461 F.2d 694 (8th Cir. 1972) and *Fitzgerald* v. *Manning,* 679 F.2d 341 (4th Cir. 1982). In *Norland,* the court held that, while the words "probable" and "possible" should not be determinative of the competency of a doctor's testimony, the testimony should be "such in nature. . .as to judicially impress that the opinion expressed represents his professional judgment as to the most likely one among the possible causes." 461 F.2d at 697. In *Fitzgerald,* the court held that medical opinions "must be stated in terms of a 'reasonable degree of medical certainty.'" 679 F.2d at 350.

■ The *Norland* and *Fitzgerald* holdings clearly differ from the long-established medical standard required in workers' compensation cases in Arkansas. Our decisions simply have not required physicians to express opinions in terms of either a "most likely possibility" or "a reasonable degree of medical certainty."

■ In *Kearby* v. *Yarbrough Brothers Gin Co.,* 248 Ark. 1096, 455 S.W.2d 912 (1970), the supreme court upheld the Commission's award of benefits based upon a doctor's statement that there "could be" a connection between Kearby's work and his fatal heart attack. In support of its decision, the supreme court favorably quoted the following language from *Atkinson* v. *United States Fidelity & Guaranty Co.,* (Texas) 235 S.W.2d 509, 513 (1950):

> It is urged that because Dr. Longoria at one point testified that, 'it is a possibility that the origin (of the disease) was incited through strain and stress and exposure,' this case comes within the rule that something more than a showing of mere 'possibility' is necessary to establish a finding of causal connection. [cite. omit.] In determining whether or not a showing of mere possibility and no more has been made, all of the pertinent evidence on the point must be considered. *The fact that an expert medical witness, in speaking of cause and effect uses such expressions as 'might cause', 'could cause', 'could possibly cause', or phrases similar thereto does not preclude a jury finding of causal connection, provided there be other supplementary evidence supporting the conclusion.*

Causal connection is generally a matter of inference, and possibilities may often play a proper and important part in the argument which establishes the existence of such relationship. (Emphasis supplied.)

In *Exxon Corporation v. Fleming*, 253 Ark. 798, 489 S.W.2d 766 (1973), the supreme court affirmed the Commission's finding of a causal connection between Fleming's injury and his subsequent death. There the treating doctor, who testified Fleming's injury and death were work-related, admitted his opinion was based upon "possibilities" rather than "probabilities." Citing *Kearby, supra,* the court held that the use of expressions or phrases similar to "could cause," "might cause" or "could be" would not bar a finding of causal connection, provided that there was other evidence supporting the conclusion. *See also Bradley County v. Adams,* 243 Ark. 487, 420 S.W.2d 900 (1967) and *Crain Burton Ford Co. v. Rogers,* 12 Ark. App. 246, 674 S.W.2d 944 (1984).

Appellees cite *Ocoma Foods v. Grogan,* 253 Ark. 1111, 491 S.W.2d 65 (1973) and *Lybrand v. Arkansas Oak Flooring Co.,* 266 Ark. 946, 588 S.W.2d 449 (Ark. App. 1979) in support of their argument that the Commission's decision here should be affirmed. Our study of both cases reflects these decisions were based upon or are consistent with the supreme court's earlier holdings in *Kearby* and *Exxon Corp.* In *Grogan,* for instance, the court acknowledged it had approved some Commission awards when the supporting medical evidence included such terms as "possible", "might" and "could cause." Nevertheless, citing both *Kearby* and *Exxon Corp.,* it held Grogan was not entitled to benefits when her doctor said it was "possible" her work aggravated her existing back condition because there was *no* evidence that her injury was job connected. The instant case is distinguishable from *Lybrand* because the court there concluded none of the medical evidence reflected that Lybrand's stroke was caused by his work.

Appellee argues that even if the Commission's legal analysis was entirely incorrect, we should affirm the Commission's decision because the Commission was acting entirely within its discretion to rule that Dr. Dickins' testimony had no probative value on the issue of causation. We cannot agree.

Again, the Commission used the wrong legal standard when deciding that Dr. Dickins' testimony must be given in terms of reasonable medical certainty before it could be said the appellant had met his burden of proof on the causation issue.

We would be violating the function of the Commission if we were to assume its findings and holding would have been the same if it had examined and weighed the evidence under the correct standard or rule set out in *Kearby, supra,* and the other cases discussed above. For that reason, we must reverse and remand this cause to permit the Commission to reconsider the evidence and to decide this cause consistent with the controlling legal principles established by Arkansas case law.

Reversed and remanded.

CLONINGER and MAYFIELD, JJ., agree.