Betty CARTER *v.* FLINTROL, INC.

CA 86-169 720 S.W.2d 337

Court of Appeals of Arkansas
Division II
Opinion delivered December 17, 1986

318

*Anthony W. Bartels*, for appellant.

*Penix Law Firm*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Betty Carter appeals from a decision of the Workers' Compensation Commission holding that she had failed in her burden of proving that a compensable injury sustained in the employ of Flintrol, Inc., was causally connected to the multiple sclerosis from which she now suffers. The appellant testified that on February 29, 1984, while working on an assembly line, she slipped, fell, and struck her head on the floor. She stated that, before the fall, she had no difficulty in maintaining her balance and had not seen a doctor in a number of years. She stated that she was off work for four days due to back pain and balance problems resulting from the fall. Upon re-turning to work, she continued to have difficulty with her balance, began experiencing vision problems, and became nauseated. She was initially seen by Drs. W. F. Sheppard and Ramon Lopez. They referred her to Drs. Patrick O'Sullivan and Jon Robertson, who hospitalized her for twelve days in Memphis. She was diagnosed as having multiple sclerosis and has been unable to

work since that time.

The medical reports of Drs. O'Sullivan and Robertson disclosed the diagnosis of multiple sclerosis. In a letter, Dr. O'Sullivan stated that "there is evidence in medical literature supporting the idea that multiple sclerosis may be triggered or aggravated by trauma." He gave no personal opinion as to the connection between the trauma and the multiple sclerosis sustained by the appellant. Dr. Wheatley Beard opined that she had "a subdural hematoma and secondarily multiple sclerosis and other vascular diseases." Dr. Lopez stated, "I do not feel that the multiple sclerosis has any relation whatsoever to her injury and appears to be just coincidental." Dr. Stevenson Flanigan examined the appellant and reported that:

> My immediately available reference material on multiple sclerosis does not disclose that such a condition can arise from trauma. It is conceivable that such a condition could be aggravated by trauma, as one of the reports I reviewed seemed to suggest. That report recorded a blow to the head. I would, however, consider the symptoms of multiple sclerosis in this case coincidental with the injury.

The administrative law judge found that the appellant had proved by a preponderance of the evidence that she sustained a compensable injury in the fall. In his discussion of the evidence, he noted that the medical opinions differed regarding a causal connection between the fall and the multiple sclerosis. He stated: "The medical evidence linking the situation to the trauma at work is a little shallow, but it is there." For those reasons, he found that the causal connection did exist. On appeal, the Commission affirmed the finding that the injury was compensable, but reversed the finding that there was a causal connection between the injury and the disability resulting from multiple sclerosis.

In her argument, the appellant acknowledges that the medical evidence as to the causal connection was in conflict, but disagrees with the Commission's conclusion that "the medical opinion supporting the appellant's position is so nebulous as to be deprived of any persuasive worth." The argument is predicated upon the decision of this court in *Pittman* v. *Wygal Trucking Plant*, 16 Ark. App. 232, 700 S.W.2d 59 (1985). We agree with the Commission that *Pittman* is distinguishable from this case. In

*Pittman*, the only medical testimony on the issue of causation was that of a physician who opined that, based on the history given him, it was "possible and probable" that a causal relationship existed between the claimant's injuries and his disability from disease. There, although there was lay testimony suggestive of a causal connection, the Commission held that the physician's "best guess" was an inappropriate basis for decision making. This court reversed the Commission's requirement in that case that medical testimony must rise to terms of medical certainty before a claimant's burden of proof could be met. We held that because the medical experts used such terms as "possible," "probable," and "might cause," among others, *does not preclude* a finding of causal connection provided there is other evidence supporting that conclusion. In *Kearby* v. *Yarbrough Brothers Gin Co.*, 248 Ark. 1096, 455 S.W.2d 912 (1970), our supreme court recognized that causal connection is generally a matter of inference and possibilities may often play a proper and important role in the establishment of that relationship.

We do not construe the Commission's opinion as applying the "medical certainty" rule to Dr. O'Sullivan's testimony. The Commission pointed out that, in *Pittman,* there was medical opinion that there was a probability of causal connection, and here there was no such medical opinion. Dr. O'Sullivan did not testify that there was a causal connection, but only that "there is evidence in medical literature supporting the idea that multiple sclerosis may be triggered or aggravated by trauma." He stated no opinion based upon the reading of that literature. Here, the Commission concluded that there was no medical opinion that there was a causal connection and agreed with the opinion of Dr. Flanigan, professor of neurology at the University of Arkansas for Medical Sciences, that the onset of symptoms of multiple sclerosis was merely coincidental and had no connection with the appellant's work-related injury. It also had before it the opinion of Dr. Lopez, which fully agreed with that of Dr. Flanigan. The Commission concluded:

> In the face of this expert medical testimony of Dr. Flanigan, we are unable to find the claimant has met her burden of proof with regard to the multiple sclerosis. Since the claimant has the burden of producing evidence and persuading the Commission of its soundness and has failed

to produce the requisite evidence, her claim for benefits for treatment of and disability attributable to the multiple sclerosis condition must be denied.

 We cannot agree with the appellant that the Commission erroneously held that one cannot meet the burden of proving causal connection without medical opinion based upon a reasonable degree of medical certainty. Based upon the testimony of Drs. Flanigan and Lopez, we cannot conclude that the finding of the Commission that the appellant had failed in her burden of proof is not supported by substantial evidence.

We do not mean to imply that the claimant must in every case establish the causal connection of the injury to the disability by expert medical testimony, or that there are not cases in which the relationship between the injury and onset of disability can give rise to an inference of such a connection without medical testimony. *Harris Cattle Co.* v. *Parker*, 256 Ark. 166, 506 S.W.2d 118 (1974); *Chambers* v. *Jerry's Dept. Store, Inc.*, 269 Ark. 592, 599 S.W.2d 448 (Ark. App. 1980). The determination of whether the causal connection exists is a question of fact for the Commission to determine. We do hold that the Commission is not required to rely upon inference where there is positive medical testimony to the contrary. The weight to be given that medical testimony is also a matter for the Commission to determine.

Affirmed.

CORBIN and GLAZE, JJ., agree.