2012 Ark. App. 17

**Zackery CLEMENT, Appellant**

v.

**JOHNSON'S WAREHOUSE SHOWROOM, INC. & National Union Fire Insurance Co., Appellees.**

No. CA 11–800.

Court of Appeals of Arkansas.

Jan. 4, 2012.

Steven R. McNeely, Little Rock, AR, for appellant.

Jarrod S. Parrish, Little Rock, AR, for appellee.

DAVID M. GLOVER, Judge.

Zackery Clement sustained a compensable hernia injury on March 12, 2009. Medical expenses and temporary total-disability benefits were paid from the date of his injury until May 10, 2010, and for a second time from July 15, 2010, until August 8, 2010. In the interim, on April 7, 2010, Clement was granted a change of physician.

Clement then filed a claim seeking additional medical treatment for his hernia injury as well as a back injury; an independent medical examination or a second change of physician; temporary total-disability benefits from May 10, 2010, to July 14, 2010, and from August 9, 2010, to a date yet to be determined; and attorney's fees. The administrative law judge found that there was no medical evidence or lay testimony to support a traumatic work-related back injury and that further medical treatment was unreasonable and unnecessary for his compensable hernia injury; she therefore denied and dismissed Clement's claim. Clement appealed to the Full Commission, which affirmed and adopted the ALJ's opinion as its own. Clement now appeals to this court, arguing that substantial evidence does not support the Commission's decision that he is not entitled to additional medical treatment and additional temporary-total disability. We affirm the Commission's decision.

In *Nabholz Construction Corp. v. Gates*, 2010 Ark. App. 182, 2010 WL 653563, this court set forth our standard of review in workers' compensation cases:

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlatch v. Southland Land & Dev.*, 84 Ark.App. 399, 141 S.W.3d 916 (2004). Substantial evidence is that relevant evidence which reasonable minds might accept as adequate to support a conclusion. *K II Constr. Co. v. Crabtree*, 78 Ark. App. 222, 79 S.W.3d 414 ([2002] 2004). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty Chem., Inc. v. Clingan*, 69 Ark.App. 369, 13 S.W.3d 218 (2000).

Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires an employer to provide an injured employee such medical services "as may be reasonably necessary in connection with the injury received by the employee." The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Stone v. Dollar Gen. Stores*, 91 Ark.App. 260, 209 S.W.3d 445 (2005). What constitutes reasonable and necessary medical treatment is a question of fact to be determined by the Commission. *Bohannon v. Wal–Mart [Wal-mart ] Stores, Inc.*, 102 Ark.App. 37, 279 S.W.3d 502 (2008).

2010 Ark. App. 182, at 1–2, 2010 WL 653563.

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). When there are contradictions in the |₃evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief; this court is foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Id.* The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Poulan Weed Eater v. Marshall*, 79 Ark.App. 129, 84 S.W.3d 878 (2002).

When the primary injury is shown to have arisen out of and in the course of employment, the employer is responsible for every natural consequence that flows from that injury. *McDonald Equip. Co. v. Turner*, 26 Ark.App. 264, 766 S.W.2d 936 (1989). The basic test is whether there is a causal connection between the two episodes. *Jeter v. B.R. McGinty Mech.*, 62 Ark.App. 53, 968 S.W.2d 645 (1998). The determination of whether the causal connection exists is a question of fact for the Commission to determine. *Carter v. Flintrol, Inc.*, 19 Ark.App. 317, 720 S.W.2d 337 (1986).

Clement injured his left lower abdomen on March 12, 2009, when a refrigerator fell on him while he was moving it. He was initially treated by Dr. Lester Alexander at Healthcare Plus; diagnosed with a left groin strain; and taken off work until March 23, at which time he was released to return to light-duty work. Clement was next seen by Dr. Emilio Tirado on April 21, 2009; Dr. Tirado's impression was a small, reducible left-inguinal hernia. Clement underwent inguinal herniorrhaphy surgery on May 1, 2009, in |₄which the hernia was repaired with mesh. Dr. Tirado then returned Clement to work on June 1, 2009, without restrictions.

Clement continued to have pain and was seen by Dr. John Cone at UAMS on July 23, 2009, for possible intervention due to recurrent left-hernia pain; Dr. Cone noted that there was a well-healed scar in the left-groin area consistent with left-inguinal hernia repair. On August 27, 2009, Dr. Cone scheduled Clement for an MRI of the lumbar spine; the results of this procedure indicated no evidence of recent traumatic injury, although there was minimal disc displacement at L4–5 and L5–S1 without dominant compressive arthopathy. On September 17, 2009, Dr. Cone noted that the plan at that point was to re-explore Clement's left groin, remove the previously placed mesh, and re-repair the hernia using a biologic material; he also noted that because the pain was "debilitating," Clement wished to proceed with the procedure, even though it might expose him once again to the risk of herniation. A nerve conduction study and EMG were performed on October 1, 2009, and both were normal and showed no evidence of femoral neuropathy or entrapment of the ilioinguinal nerve.

On October 6, 2009, Clement underwent a second left-inguinal hernia repair. During this procedure, the synthetic mesh placed during the first surgery was found to be wadded up; it was removed and the hernia was repaired for a second time, this time using a biologic material known as Strattice mesh. On October 8, 2009, Clement returned to UAMS with extreme pain and swelling in his groin area; Doppler images were obtained of his testicles.

The left testicle was increased in size but there was no arterial blood flow identified within the left testicle consistent with torsion. On that same day, Dr. John Delk performed exploratory surgery to determine if Clement had an ischemic left testicle; however, postsurgery diagnosis was nonischemic left testicle. During this procedure the scrotum was opened and it was noted that there was no twisting or torsion of the cord in the left testicle. A Doppler was performed, and there was an excellent Doppler pulse in the testicular artery adjacent to the testicle. On October 11, 2009, Clement was readmitted to UAMS due to pain; Doppler results demonstrated minimal blood flow within the left testicle, which was consistent with a left testicular infarct. Dr. Benjamin Davis noted that even though there was a possible testicular infarct and severe postop swelling, there was no indication at that time for exploration. On October 13, 2009, Dr. David Yarnell noted that the scrotum remained swollen with what appeared to be some hematoma, but that pain was improved on pain medication; that given Doppler findings and findings of previous scrotal exploration, there was no recommendation of further exploration; and that there was need for pain control for an infarcted testicle. In the discharge history on October 14, 2009, it was noted that Dopplers during the exploratory surgery showed blood flow to both testicles, and Dopplers performed bedside also showed that blood flow was present to both testicles.

In a consult note dated October 16, 2009, Dr. Gregory Head, a urologist, recommended a general surgery consultation for evaluation of left-inguinal hernia repair and possible ischemia to left testis from that repair; stated that the genitourinary department (GU) would not manage pain and swelling now that torsion was ruled out nor would it explore left-inguinal incision to rule out spermatic cord compression from the hernia repair; and stated that GU scrotal exploration was not the original cause of pain and swelling.

Dr. Michael Pollock evaluated Clement on November 13, 2009. He noted that Dr. Tirado had repaired a left-inguinal hernia on May 1; that it was repaired again in October 2009; that two days after the second repair he returned to the UAMS emergency room complaining of left-testicular pain; that there was a concern for left-testicular ischemia and testicular torsion but upon taking him to the operating room, normal blood flow was found; and that Clement returned four days after his second hernia surgery complaining of left-groin pain and was placed on pain medication and discharged. Upon physical exam, Dr. Pollock found a well-healed scar on Clement's left groin; he also found that the left testicle was of normal size and not tender. Dr. Pollock had no specific therapy to recommend; he was of the opinion that Clement would be fine if he just allowed things to heal.

Clement then saw Dr. Tim Langford on December 14, 2009. Upon physical examination, Dr. Langford noted that the left testis was tender, the upper two-thirds was firm, and it was smaller with an enlarged epididymis. He was of the opinion that the exam was consistent with probable testicular infarction. Dr. Langford explained to Clement that options were observation, with probability that the left testis would atrophy, or left orchiectomy (surgical removal of testicle); however, Dr. Langford explained to Clement that he would not be assuming his care.

On January 18, 2010, Clement was again seen by Dr. Alexander. A CT scan was performed on February 5, 2010; there was no evidence of a recurrence of the hernia in the left-inguinal region.

On February 12, 2010, Clement was seen by Dr. David Shirley for complaints of pain in his left testis. Dr. Shirley noted that while Clement was emphatic that his left testis needed to be removed because "several" doctors told him that, Clement did not have any Doppler scans or operation notes. Dr. Shirley noted that he did not feel a hernia pulsation, and was of the opinion that at five months post-op, he would expect more atrophy, leading him to the conclusion that there was a good chance that the testis was not ischemic. Dr. Shirley noted that orchiectomy was unlikely to change Clement's pain pattern, and in the absence of infection, the only reason to perform an elective orchiectomy would be to try to reduce pain. He saw no benefit in exploration of the scrotum five months out from surgery. Dr. Shirley also found that there was no medical reason why Clement could not resume normal activity at this point, even though he was tender.

After the April 7 change of physician was approved, Clement was seen by Dr. Carl Covey on May 10, 2010, for pain management. Dr. Covey noted that Clement had tested positive for THC, and he refused to write medication prescriptions until Clement ₈had a clean drug screen. Clement returned to Dr. Covey on July 28, 2010; however, he was advised that no medications could be written until the urine drug-screen results were verified, which could take up to two weeks. Dr. Covey then wrote a letter, dated August 12, 2010, to Clement withdrawing from further professional attendance.

During this time, a second CT scan was performed on June 9, 2010, that was normal, showing no edema, hematoma, or recurrent hernia. Another CT scan was performed at UAMS on August 16, 2010, that showed postsurgical changes from the left-sided herniorrhaphy but nothing else related to the hernia. A fourth CT scan was obtained at Jefferson Regional Medical Center on September 11, 2010, that was also normal.

On September 15, 2010, Dr. Anna Redman, Clement's primary-care physician since 2007, wrote a letter stating that Clement had persistent left-inguinal pain and low-back pain that needed to be further evaluated by a urologist and general surgeon to ascertain the etiology of his pain.

Clement divides his argument into three subparts—an evidentiary objection, additional medical treatment, and temporary total disability.

### Evidentiary Objection

The first issue Clement raises in his brief is whether pictures of him that appeared on Facebook and MySpace should have been admitted into evidence. He complains that ₉the pictures "are a disgrace to the dignity of the workers' compensation proceedings and the legal system" and have nothing to do with his medical treatment.

In *Bryant v. Staffmark, Inc.*, 76 Ark. App. 64, 69, 61 S.W.3d 856, 859–60 (2001), this court held:

The Workers' Compensation Commission has broad discretion with reference to admission of evidence, and its decision will not be reversed absent a showing of abuse of discretion. *Brown v. Alabama Elec. Co.*, 60 Ark.App. 138, 959 S.W.2d 753 (1998). The Commission is given a great deal of latitude in evidentiary matters; specifically, Arkansas Code Annotated section 11–9–705(a) (Repl.1997) states that the Commission "shall not be bound by technical or statutory rules of evidence or by technical or formal rules of procedure." Additionally, the Commission is directed to "conduct the hearing in a manner as will best ascertain

the rights of the parties." Ark.Code Ann. § 11–9–705(a); *Clark v. Peabody Testing Servs.*, 265 Ark. 489, 579 S.W.2d 360 (1979).

We find no abuse of discretion in the allowance of the photographs. Clement contended that he was in excruciating pain, but these pictures show him drinking and partying. Certainly these pictures could have a bearing on Clement's credibility, albeit a negative effect that Clement might not wish to be demonstrated to the ALJ or the Commission. We hold that there was not an abuse of discretion in allowing the photographs.

### Additional Medical Treatment

Clement sought benefits before the ALJ and the Commission for what he categorized as a work-related back injury, which was denied. We note that in his brief to this court, Clement concedes that substantial evidence supports the Commission's denial of benefits on this issue and abandons this as an issue on appeal.

We turn now to Clement's second issue, whether he is entitled to additional medical treatment for his left testis. Clement has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary, and it is the Commission's responsibility to determine what constitutes reasonable and necessary medical treatment. *Nabholz, supra.* Here, the ALJ found that diagnostic testing had ruled out a recurrent hernia, nerve damage, or inflammation, and Drs. Pollock and Shirley did not consider Clement to be a surgical candidate. While there were conflicting medical opinions, it was the responsibility of the Commission to reconcile conflicting opinions and to determine the weight and credibility of medical opinions. The Commission's opinion that further medical treatment is not reasonably necessary is supported by substantial evidence.

### Additional Temporary Total Disability

Clement's third issue is entitlement to temporary total disability. Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *St. Edward Mercy Med. Ctr. v. Dart,* 2011 Ark. App. 583, 2011 WL 4585576. The healing period ends when the employee is as far restored as the permanent nature of his injury will permit. *Id.* The question of when the healing period has ended is a factual determination for the Commission that will be affirmed if it is supported by substantial evidence. *Id.*

Clement was released to return to work on February 12, 2010. As we are affirming the Commission's determination that Clement is not entitled to further additional medical benefits, the question of additional temporary total-disability benefits is now moot.

Affirmed.

GRUBER and HOOFMAN, JJ., agree.