BEARDEN LUMBER COMPANY *v.* Bobby BOND
and LIBERTY MUTUAL INSURANCE COMPANIES

CA 82-160                                644 S.W.2d 321

Court of Appeals of Arkansas
Opinion delivered January 5, 1983

*Bridges, Young, Matthews, Holmes & Drake,* for appellant.

*Whetstone & Whetstone* by: *Bud Whetstone,* for appellee Bond.

*Friday, Eldredge & Clark,* by: *Donald H. Bacon,* for appellee Liberty Mutual Insurance Companies.

GEORGE K. CRACRAFT, Judge. Bearden Lumber Company appeals from the decision of the Workers' Compensation Commission holding it liable for disability benefits due Bobby Bond under the Arkansas Workers' Compensation Act. Bobby Bond received an acknowledged compensable injury to his back while employed at Bearden Lumber Company at a time when Liberty Mutual Insurance Company was its workers' compensation carrier. He subsequently suffered a second episode of disability to his back at a time when Bearden was self-insured. The sole issue in the case is whether the second episode was a natural and probable result of the initial injury for which Liberty Mutual would remain liable under our rules applicable to recurrence of such injury or resulted from an independent intervening cause, for which Bearden would be liable under our rules applicable to aggravations of preexisting conditions. Appellant contends that the Commission erred in holding it, rather than Liberty Mutual, its former carrier, liable for the disability and medical expenses. We do not agree.

This case involves a series of accidents suffered by Bond while employed by Bearden over a period of approximately three years. In November of 1976 Bond fell through some wood flooring and injured himself but did not require treatment. In March of 1977 he injured his back while picking up a heavy object. Treatment by Dr. Lohstoeter disclosed that he had suffered a slipped disc as a result of that incident but did not require surgery at that time. Bond was off work for a period of nearly two weeks and then returned to his job.

In August, 1978 he again slipped on an oily surface and fell, injuring his back so severely that Dr. Lohstoeter was required to perform surgery to correct it. Bond did not return to work until February 12, 1979. At the time of the August, 1978 injury Bearden's workers' compensation carrier was Liberty Mutual Insurance Company. The carrier paid all benefits due under the Workers' Compensation Act. Shortly before Bearden returned to work after his surgery, Liberty Mutual ceased to be the carrier for Bearden who thereafter was a self-insured employer.

In April, 1979 Bond sustained a fall of some eight feet while working for Bearden, then self-insured, but did not miss any work as a result of it. In May of that year he again slipped and fell and that injury also required him to miss no work. In January of 1980 he was terminated at Bearden and again began working for a different employer until his condition reached the point where he could not do his work and he returned to Dr. Lohstoeter. Dr. Lohstoeter determined that his back was in such a condition that he was temporarily totally disabled. There was no evidence of any accidental injury while in his second employment.

Bearden Lumber Company contended that any disability Bond now suffers resulted from a natural progression or "recurrence" of that for which the surgery was performed and that Liberty Mutual was still liable for his present claim. Liberty Mutual contended that the incidents in April and May following Bond's surgery and while in the employ of Bearden were intervening second injuries or "aggravating" ones, and that Bearden Lumber

Company, as a self-insured employer when those subsequent injuries occurred, was liable for any benefits due Bond. The Commission found in favor of Liberty Mutual and this appeal follows. Appellant first argues that the finding of the Commission is not supported by the evidence.

On appellate review of workers' compensation cases the evidence is reviewed in the light most favorable to the finding of the Commission and given its strongest probative value in favor of its order. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. The extent of our inquiry is to determine if the finding of the Commission is supported by substantial evidence. Even where a preponderance of the evidence might indicate a contrary result we will affirm if reasonable minds could reach the Commission's conclusion. *Bankston* v. *Prime West Corporation,* 271 Ark. 727, 601 S.W.2d 586 (Ark. App. 1981); *Clark* v. *Peabody Testing Service,* 265 Ark. 489, 579 S.W.2d 360 (1979).

Bond testified that when he returned to work after his surgery on February 12, 1979 he went to his regular job as foreman and was doing basically the same job he had done before. He was working full time, the same as he was before he got hurt. He testified that he was again injured in April, 1979 when he stepped on a piece of iron, lost his footing, and fell a distance of eight feet. "After that I started going down and then I had the other problem and I just kept going down and down. I went back to Dr. Lohstoeter." He testified that in May of 1979 he injured himself again coming down a catwalk. "At the time I stopped working at Bearden Lumber Company I wasn't in the best condition. I was going downhill from them *other two falls* and I just kept getting worse and worse and worse." He testified that after his surgery and return to work he found that the surgery had helped him. After the fall in April he had to restrict his activities and wasn't able to do as much.

The appellant argues that Dr. Lohstoeter does not state with any degree of certainty which of the incidents actually caused the final result and that it was therefore a natural

consequence of the original injury. While Dr. Lohstoeter did not state which of the instances subsequent to his surgery was the direct cause of his present condition, he did attribute the disability to the series of subsequent incidents in the following language:

> [A]nd taking this man from the time of surgery, watching him just absolutely do very well, taking him to a time of doing so well that I could even return him to work, then taking care of him when these mishaps that occurred at that time, I'm talking about during that time span of eight to ten months or so, we finally reached a stage in the Spring of 1980 when he was stopped once again and that's where I am. I have no other recourse but to describe the incidents that he has told me have accumulated and have aggravated his low back area to the point that he has arachnoiditis now, post traumatic in variety, he does not need surgery but he does need conservatism.

Throughout his testimony Dr. Lohstoeter made constant use of the word "aggravation" when referring to the subsequent falls and their effect on Bond's present condition. He stated further, "I think the man was hurt in April, I think he was hurt again in May or June, and I think each successive hurting we've got a little more added of an inflammatory production stage and then bang, he just reaches the state where he can't go any further."

The Commission found that Bond's present disability resulted from the falls he suffered subsequent to his original surgery and was an aggravation of the prior injury rather than a mere recurrence of it. It applied our rule that when an accidental injury aggravates a prior one, the one in whose employ the second injury occurs is liable for all of the consequences naturally flowing from that incident; and it is only when the employee suffers merely a recurrence of a former injury without an intervening cause that the employer at the time of the initial injury is liable for the recurring disability. *Burks, Inc.* v. *Blanchard,* 259 Ark. 76, 531 S.W.2d 465 (1976). The finding of the Commission is supported by the evidence and we find no error in its application of the law to those facts.

Appellant's argument for reversal is not based only on the substantial evidence rule of appellate review. The main thrust of its argument is that the Commission misapplied the true test for determining liability. This argument advanced in its brief is stated as follows:

There seems to be a tendency on the part of the Commission and the courts alike to become bogged down in the semantic differences between a "re-occurrence," [sic] and an "aggravation." Such, it is suggested, should not be the case. If the standard advanced by Professor Larson and accepted by the Arkansas Supreme Court in *Aluminum Co. of America v. Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960), that all of the logical events flowing from the initial incident should be the responsibility of the employer and the carrier at the time of the initial incident are applied, it is clear that Liberty Mutual rather than Bearden Lumber Company is responsible for temporary total disability benefits to the claimant.

After a careful review of our cases on this subject we cannot agree that the courts and the Commission have applied differing connotations of words employed or that they have not consistently applied the same principle announced in *Williams*. We conclude that in all of our cases in which a second period of medical complications follows an acknowledged compensable injury we have applied the test set forth in *Williams* — that where the second complication is found to be a natural and probable result of the first injury, the employer remains liable. Only where it is found that the second episode has resulted from an independent intervening cause is that liability affected. While there may be some variance in the words used to describe the principle, there has been no departure from the basic test, i.e., whether there is a causal connection between the two episodes. *Aluminum Co. of America v. Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960); *Moss v. El Dorado Drilling Co.*, 237 Ark. 80, 371 S.W.2d 28 (1963); *Home Ins. Co. v. Logan*, 255 Ark. 1036, 505 S.W.2d 25 (1974); *Burks, Inc. v. Blanchard, supra; Halstead Industries v. Jones*, 270

Ark. 85, 603 S.W.2d 456 (Ark. App. 1980); *Allen Canning Co.* v. *McReynolds,* 5 Ark. App. 78, 632 S.W.2d 450 (1982).

In *Williams* and *Logan* the issue of causal connection was described by use of the words "natural and probable consequences" and "intervening cause." We conclude that in the other cited cases it is clear the court, although still applying the causal relation test, described "natural and probable consequences" as a "recurrence of the first injury" and "intervening contributing cause" as "aggravation of a preexisting condition." We further conclude that in all our cases the test was and is the same: Is the second episode a natural and probable result of the first injury or was it precipitated by an independent intervening cause? We think that the Commission has correctly applied that test to the case now before us, regardless of the terminology employed.

The use of these different words descriptive of the rule being applied is best explained by the history of the development of our case law in this area, which has been derived largely from Larson's treatise on workmen's compensation. Larson places the "second medical complication" cases in two logical groups — those in which the second episode manifests itself in a non-industrial setting and those in which it arises in the course of employment. This is appropriate because of the different effect the claimant's own conduct may have on the employer's continued liability. Where the second episode results from non work-related negligent conduct on the part of the claimant which effects an independent intervening cause, no liability can be placed upon the employer. Where it occurs within the scope of the employment the neglect of the claimant leading to his injury is of no consequence. The employer at the time of the injury is liable for all consequences of that injury without regard to the claimant's conduct.

In §13.00 *Larson's Law of Workmen's Compensation,* the rule applicable to the non-industrial second episode is stated as follows:

RANGE OF COMPENSABLE CONSEQUENCES

§ 13.00   When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

In *Aluminum Co. of America* v. *Williams, supra,* the first of our cases in this area, the second episode occurred after Williams left his employment at Alcoa. While in his home he arose from a chair and suffered a "catch" in his back necessitating a second back operation. As this case involved a non work-related second episode our court adopted Larson's quoted statement of the rule applicable to those cases. *Williams* was followed by *Home Insurance Co.* v. *Logan, supra,* another non work-related second episode case. *Logan* also applied the "natural and probable consequence" language contained in *Williams.*

In § 95.12 Larson stated the rule applicable to second medical complication cases which are "work-related" as follows:

If the second injury takes the form merely of a *recurrence* of the first, and if the second incident does not contribute even slightly to the *causation* of the disabling condition, the insurer on the risk at the time of the original injury remains liable. . . . On the other hand, if the second incident *contributes independently to the injury,* the second insurer is solely liable, even if the injury would have been less severe in the absence of the prior condition, and even if the prior injury contributed to the major part of the final condition. This is consistent with the general principle of the compensability of the *aggravaton of a preexisting condition.* (Emphasis supplied)

*Burks, Inc.* v. *Blanchard, supra,* was the first case to come before the court in which the second episode of medical complication arose in the course of a second employment and was work-related. There the claimant had suffered an initial injury while in the employ of one

employer and the second episode was precipitated while at work for a new one. In holding that there was no new independent second injury which would relieve the first employer of liability the court cited Larson's rule applicable to work-related second episodes as above quoted. The test is the same. Only the words are different. As most of the other cases we have cited were work-related cases, the courts have employed language cited from *Larson* in *Burks* — "recurrence of prior injury" and "aggravation of pre-existing condition" — rather than that in *Williams. Moss* v. *El Dorado Drilling Co., supra,* uses the phrases interchangeably. Both sets of phrases have been given the same meaning and both rules apply the same test.

It is also suggested in the brief and oral argument that the doctor in his use of the word "aggravation" might have given that word a different connotation. A careful reading of his deposition does not convince us that he did. Furthermore the testimony of medical experts is merely an aid to the Commission in resolving the issues of fact. The Commission has the duty to use its experience and expertise in translating the testimony into findings of fact. We conclude that it did so in this case.

Affirmed.