LIBERTY MUTUAL INSURANCE COMPANY *v.*
Willie COLEMAN and the Honorable Harvey L. Yates,
Circuit Judge

92-947                                     852 S.W.2d 816

Supreme Court of Arkansas
Opinion delivered May 17, 1993
[Rehearing denied June 21, 1993.*]

*Rieves & Mayton,* by: *William J. Stanley,* for appellant.

*Daggett, Van Dover & Donovan,* for appellee

TOM GLAZE, Justice. Liberty Mutual Insurance Company seeks a writ of prohibition against the St. Francis County Circuit Court and for its grounds, asserts that court has erroneously assumed subject matter jurisdiction of a tort-of-outrage case filed

---

*Holt, C.J., and Brown, J., would grant reheaing; Newbern, J., not participating.

by Willie Coleman. Liberty Mutual contends Mr. Coleman's exclusive remedy is under the Workers' Compensation Act. *See Fore* v. *Circuit Court of Izard County*, 292 Ark. 13, 727 S.W.2d 840 (1987).

In the present case, Mr. Coleman, a workers' compensation claimant, sustained an injury to his right hand and arm on September 1, 1989. The workers' compensation insurer, Liberty Mutual, partially acknowledged coverage for Coleman's injury and paid him some benefits. Coleman was afforded medical care from Dr. L'Heureux, an orthopedic surgeon. The doctor determined Coleman could not regain satisfactory improvement to his hand and arm unless he received extensive therapy from a pain clinic in Memphis, and the doctor made his recommendation known to Liberty Mutual by telephone and letter dated October 17, 1989. A new representative of Liberty Mutual initially denied the doctor's recommendation, and stated it would rather pay Coleman the disability relating to his arm than to pay the expenses of the pain clinic. Liberty Mutual subsequently authorized treatment at the pain clinic blaming the initial refusal on one of its representatives as being unfamiliar with Coleman's file. It further asserted Coleman failed to take advantage of Liberty Mutual's offer.

On April 11, 1990, Coleman's right arm was amputated below the elbow; Coleman then filed an A7 claim form with the Workers' Compensation Commission, and also filed this suit for the tort of bad faith and outrageous conduct, alleging Liberty Mutual's wilful, intentional and unjustified refusal to authorize treatment and pay Coleman's medical expenses for therapy at the pain clinic caused the loss of his arm. Liberty Mutual answered, denying that it refused necessary medical treatment to Coleman or that its initial refusal caused Coleman to lose his arm. Liberty Mutual further moved to dismiss Coleman's tort action, stating his exclusive remedy was under the Workers' Compensation Act.

The trial court denied Liberty Mutual's motion, and in this writ of prohibition action filed by Liberty Mutual, the issue is whether Coleman can sue the workers' compensation insurer for an intentional tort when that insurer declines to pay certain medical expenses. The answer is no. The single issue presented here has been previously decided by this court at least twice. *Cain*

v. *National Union Life Ins. Co.*, 290 Ark. 240, 718 S.W.2d 444 (1986); *Johnson* v. *Houston General Ins. Co.*, 259 Ark. 724, 536 S.W.2d 121 (1976).

In *Cain*, the claimant, like Coleman here, was refused payment of certain medical expenses by the workers' compensation insurance carrier. The claimant subsequently filed suit for intentional tort against the carrier, alleging the insurer had stipulated it would pay all medical expenses and its failure to do so caused the claimant to suffer emotional distress, humiliation, and embarrassment. The trial court dismissed the claimant's suit, and this court affirmed, stating as follows:

> We have previously ruled on this issue. In *Johnson* v. *Houston General Insurance Co.*, 259 Ark. 724, 536 S.W.2d 121 (1976), we held that the benefits payable pursuant to the workers' compensation act, and the procedure set out in that act for obtaining those benefits, constitute an exclusive remedy, and *that remedy precludes an action at law, even for an intentional tort arising out of the non-payment of benefits.*

> [Ms. Cain], the plaintiff claimant below, asks us to overrule *Johnson, supra.* We decline to do so because the holding conforms with the workers' compensation act which provides the remedies for late payment. The statutory remedies include: (1) A twenty percent penalty plus interest for the late payment of an award, Ark. Stat. Ann. § 81-1319(f)(g) (Repl. 1976), (2) A provision by which the Commission may require a bond from an employer to insure payment, Ark. Stat. Ann. § 81-1319(j) (Repl. 1976), and (3) A provision that a final award may be filed with the circuit clerk which causes it to become a lien on the property of the employer, Ark. Stat. Ann. § 81-1325 (c) (Repl. 1976).

> Any change concerning the exclusivity of the statutory remedies or the form of those remedies must come legislatively.

Coleman briefly alludes to the *Cain & Johnson* decision and the dissenting opinion, in particular, offers succinct reasons why those decisions should not apply to the situation here. In short, the

dissenting opinion says Coleman's claim does not involve nonpayment of benefits, but instead characterizes his loss as a second injury which resulted from Liberty Mutual's "refusal to approve treatment." Obviously, Mr. Coleman's failure to obtain treatment at the pain clinic recommended by Dr. L'Heureux was directly due to Coleman's claim that Liberty Mutual would not pay for such treatment. Thus, as was the case in *Cain*, the workers' compensation insurer here declined (initially at least) to pay certain medical expenses, and Coleman, the claimant, brought suit alleging bad faith on the insurer's part. The only difference here is that Coleman further alleged Liberty Mutual's refusal to pay medical expenses supported the wilful or intentional tort of outrage. Coleman, under the rule of law established in *Cain* and *Johnson*, simply is precluded from suing the insurer for such an intentional tort arising out of the nonpayment of medical expenses.

■ As previously mentioned, Liberty Mutual claims it authorized payment of Coleman's treatment at the pain clinic, and its initial refusal did not cause him to lose his arm. Coleman disagrees. Nevertheless, under settled law, Coleman's remedy was to petition the Commission and show that the pain clinic expenses were reasonable and should be paid by Liberty Mutual. Apparently, Coleman made no such request of the Commission. At least, such a request is not a part of the record before us. Clearly, Coleman is not entitled to dual remedies, one for intentional tort and another under the Workers' Compensation Act, as the dissenting opinion would allow.

■ Because the rule in *Cain* and *Johnson* applies here, Liberty Mutual's petition for writ of prohibition to the St. Francis County Circuit Court must be granted. Coleman's exclusive remedy lies in his pending workers' compensation case numbered WCC D914016.

■ In conclusion, the dissenting opinion's reference to a second injury suggests Coleman cannot be said to have elected his Workers' Compensation remedy because his tort action emanates from his second injury (amputation) which occurred after his initial on-the-job injury and Workers' Compensation claim. Such a suggestion is in total conflict with established law. Successive injuries are dealt with under the Workers' Compensa-

tion law, Ark. Code Ann. § 11-9-525 (1987); in addition this court has held that when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an intervening cause attributable to the claimant's own negligence or misconduct. *Aluminum Co. of America* v. *Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960); *Bearden Lumber Co.* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 316 (1982). The Workers' Compensation Commission has the initial jurisdiction to determine the compensability issue involving Coleman's successive or so-called second injury.

Because jurisdiction in this matter rests with the Workers' Compensation Commission, we grant Liberty Mutual's request for writ of prohibition.

HOLT, C.J., NEWBERN and BROWN, JJ., dissent.

JACK HOLT, JR., Justice, dissenting. I respectfully dissent.

Admittedly, workers' compensation carriers clearly share the same immunity from injured employees' lawsuits as employers. *See Burkett* v. *PPG Industries, Inc.*, 294 Ark. 50, 740 S.W.2d 621 (1987). As such, claims against carriers are generally within the Workers' Compensation Commission's sole jurisdiction. Yet, certain narrow exceptions to the general rules of exclusivity have been carved out by our courts as well as by other courts. Liability based upon a wilful and intentional act by the employer entitles an employee to bring a common law tort action. *See Thomas* v. *Valmac Indus., Inc.*, 306 Ark. 228, 812 S.W.2d 673 (1991); *Fore* v. *Circuit Court of Izard County*, 292 Ark. 19, 727 S.W.2d 840 (1987). And, this narrow exception is applicable to Mr. Coleman's situation.

Here, it is claimed that Liberty Mutual's outrageous conduct caused Mr. Coleman not only emotional harm but a condition more egregious . . . actual physical deformity. Thus, Mr. Coleman should be permitted to proceed in a common law tort action and avoid the exclusive remedy under the Workers' Compensation Law if he can show actual, specific and deliberate intent by Liberty Mutual to injure him. *See Sontag* v. *Orbit Valve Co.*, 283 Ark. 191, 672 S.W.2d 50 (1984).

The majority cites *Cain* v. *National Union Life Ins. Co.*, 290 Ark. 240, 718 S.W.2d 444 (1986), as authority to grant the petition for writ of prohibition asserting that this case involves nonpayment of benefits. However, our holdings in *Cain* and *Johnson* are simply not applicable. Relying on Ark. Code Ann. § 11-9-802 (1987), we determined in *Cain* that the Workers' Compensation Act provided the exclusive remedy for intentional torts arising out of the nonpayment of benefits.

Similarly, in *Johnson* the appellant appealed a dismissal of a complaint against his workers' compensation carrier. In affirming the dismissal, this court was faced with a situation in which an employee wanted to bring a common law action against the carrier because of its failure to pay benefits previously awarded by the Workers' Compensation Commission.

However, unlike the claims in *Cain* and *Johnson*, Mr. Coleman's claim does not involve nonpayment of benefits. It involves an allegation of outrageous conduct against a workers' compensation carrier in refusing to approve treatment resulting in a second injury which necessitated arm amputation. There is a marked distinction between a refusal to pay a workers' compensation claim and a refusal to approve recommended treatment. As such, a suit for recovery under the tort of outrageous conduct seeks neither compensation nor medical benefits for the original on-the-job injury.

Further, the majority makes mention and gives weight to an A7 Workers' Compensation claim form purportedly filed by Mr. Coleman. Since the record does not reveal this form or its contents to us, we cannot say when or if the form was actually filed, or whether or not the purpose of its filing was for a claim for Mr. Coleman's initial injury or for his alleged second injury.

For these reasons, Mr. Coleman's claim for an alleged second injury should be treated as a separate claim and Liberty Mutual's petition for writ of prohibition should not lie.

If this court denied the writ, we would not be making a determination as to whether Liberty Mutual's conduct was sufficient to justify such a claim; we would simply be saying that a question of fact exists as to whether there is a causal connection between the alleged acts of Liberty Mutual in refusing to approve

the recommended treatment and Mr. Coleman's claim of a second injury.

Accordingly, I think the circuit court does have jurisdiction to proceed further in this matter and the petition for writ should be denied.

NEWBERN and BROWN, JJ., join in this dissent.