Bruce BARNARD *v.* B & M CONSTRUCTION

CA 95-247                                                        915 S.W.2d 296

Court of Appeals of Arkansas
Division II
Opinion delivered February 14, 1996

*Lane, Muse, Arman & Pullen*, by: *R. Keith Arman*, for appellant.

*Anderson & Kilpatrick*, by: *Michael P. Vanderford*, for appellee.

JOHN F. STROUD, JR., Judge. Bruce Barnard was employed as a construction worker by B & M Construction Company on February 10, 1992, when he fell from a steel beam onto a concrete floor, striking his head. He suffered a closed head injury and had headaches and double vision. B & M Construction accepted the claim as compensable and paid temporary total disability and medical benefits. At a hearing before the administrative law judge, Mr. Barnard contended that he was entitled to a physical impairment rating due to loss of vision. The law judge denied and dismissed the claim. After conducting a de novo review, the Workers' Compensation Commission

affirmed and adopted the decision of the administrative law judge. We affirm the denial of the claim.

■ The claimant raises one point on appeal, stating that he has shown by substantial evidence that he has sustained permanent disability as a result of his admittedly compensable injury. This is not the standard by which we review cases when the Commission has denied a claim. Where, as here, the Commission denies a claim because the claimant has failed to show entitlement by a preponderance of the evidence, the substantial evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Brantley* v. *Tyson Foods, Inc.*, 48 Ark. App. 27, 887 S.W.2d 543 (1994). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wright* v. *ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). On appeal, we are required to view the evidence in the light most favorable to the findings and give the testimony its strongest probative force in favor of the Commission's action. *Tyson Foods, Inc.* v. *Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988).

The evidence, which includes testimony by the claimant as well as medical testimony and records, shows that the claimant reported headaches and vision problems after the accident. The claimant stated that he continued to have double vision when viewing objects up to four and one-half feet away. Dr. Michael Brodsky followed the claimant at Arkansas Children's Hospital Eye Clinic. Dr. Brodsky diagnosed the claimant's vision problem as convergence insufficiency and prescribed reading glasses with prisms incorporated into them in order to see objects close-up and use his eyes together to avoid double vision.

In support of his claim for permanent disability, the claimant refers to his need to wear two pairs of glasses to see properly. He points to the testimony of ophthalmologist Dr. Thomas R. Wallace that a change of glasses would be required for switching from close to distant work, such as when leaving close-up work at a bench to walk across a room. The claimant concludes that he can no longer do construction work because he cannot walk while wearing the prism glasses which he must wear for working with a screwdriver or hammer and nails. The

claimant states, however, that he has a riding lawnmower, a push mower, and a leaf mower; that he is able to do lawn work; and that he is able to drive a car.

The medical evidence includes conflicting reports concerning the claimant's fields of vision. Dr. Wallace, in determining the claimant's impairment rating, referred to testing the visual fields. His report of March 15, 1994, states:

> I have calculated Mr. Barnard's disability based on my interpretation of *Guide to the Evaluation of Permanent Impairment*, Third Edition Revised. . . .

> Right eye appears to be his worse [sic]. He has 20/20 vision in that eye for no central vision loss. His visual field loss is approximately 47%. This is an inferior hemianopia and according to the above mentioned book this entitles him to an addition 10% of loss, so his visual field loss in the right eye is 47% plus 10% or 57%. Combining this with the 57% loss of the right eye using the combined value chart shows a 100% loss in the right eye.

> The left eye has no loss of central vision. He has lost 10% visual field with an extra 5% because he has lost an inferior quadrant yielding 15% loss of visual field. Combining these on the combined value chart yields 16%.

> When you combine the impairment in the worse eye (right) 100% and the better eye (left) 16% and . . . an impairment of the visual system of 38%. . . this shows an impairment of the whole person of 36%.

The claimant's visual fields were also tested by Dr. George Schroeder, an ophthalmologist, and Dr. John Stuckey, an optometrist. In a letter of June 13, 1994, optometrist Dr. Thomas H. Gulley compares their test results to those which Dr. Wallace obtained. Dr. Gulley states in his letter:

> These fields were done on the same type of instrument and the same threshold levels as at Dr. Tom Wallace's office. As you can see, the results are somewhat different and on both tests, it states there is low patient reliability.

In a letter dated July 21, 1994, Dr. Gulley evaluates the claimant's corrected vision and refers to the subjective nature of

the testing:

> This is in response to [respondents'] questions. Bruce Barnard has corrected vision of 20/20 in both eyes. In other words, while wearing his glasses his vision is normal.

> The disability rating given by Dr. Tom Wallace is based on the threshold test which is used to determine any deficit in Mr. Barnard's field of vision. Dr. Wallace did the test on two occasions and the results were different in each instance. I sent Mr. Barnard to Drs. Stuckey and Schroeder on June 9, 1994, to have that test performed. The results of the test performed by Dr. Stuckey and Schroeder are different than those done by Dr. Wallace. And it states on the test form that there is low patient reliability on all the tests. The validity of these tests is based on the answers given by Mr. Barnard. Because the three tests done are all different, none can be said to be a reliable test of Mr. Barnard's field of vision. In my opinion, from the results of this test, it would be difficult to rate Mr. Barnard with any permanent impairment as a result of the on-the-job injury.

The impairment rating given by Dr. Wallace does not address the claimant's vision as corrected with glasses. Arkansas Code Annotated § 11-9-521(1987) addresses compensation for scheduled permanent injuries. Subsection (c) states, "In all cases of permanent loss of vision, the use of corrective lenses may be taken into consideration in evaluating the extent of loss of vision." Dr. Gulley stated that the claimant's corrected vision was normal.

The Commission found that the claimant had not sustained his burden of proof by a preponderance of the credible evidence of record, and found that the claimant had not sustained any permanent disability as a result of his admittedly compensable injury. The Commission has the duty of weighing medical evidence as it does any other evidence, and the resolution of any conflicts in the medical evidence is a question of fact for the Commission. *Bartlett* v. *Mead Containerboard*, 47 Ark. App. 181, 888 S.W.2d 314 (1994). The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions

66

of the testimony it deems worthy of belief. *Jackson* v. *Circle T. Express*, 49 Ark. App. 94, 896 S.W.2d 602 (1995). We conclude that the findings of the Commission are supported by substantial evidence.

Affirmed.

COOPER and GRIFFEN, JJ., agree.