Waymond DUGAN *v.* JERRY SWEETSER, INC., and
Bituminous Insurance Companies

CA 95-1066                                    928 S.W.2d 341

Court of Appeals of Arkansas
Division II
Opinion delivered September 11, 1996
[Petition for rehearing denied October 9, 1996.]

*Tolley & Brooks, P.A.,* by: *Jay N. Tolley,* for appellant.

*Anderson & Kilpatrick,* by: *Randy Murphy,* for appellees.

WENDELL L. GRIFFEN, Judge. Waymond Dugan ("Dugan" or "appellant") suffered an electrical shock on September 7, 1993, while working for his employer, Jerry Sweetster, Inc. ("Sweetster" or "the employer"). Dugan was draining water from a hole with an electric pump when the pump stopped working. When Dugan reached down and touched the pump, he received a shock that lasted about ten seconds. He recalled a small explosion, recalled being knocked backwards, and recalled that he lay on a nearby pipe semiconscious for an estimated 15-20 minutes until help arrived. Dugan was admitted to Washington Regional Medical Center in Fayetteville where he presented with an "entry port" or burn site on his hand, but no exit port.[1] He complained of anxiety and chest pains, but a battery of tests revealed nothing abnormal except for the 3-4 mm burn site on his hand. He remained at the hospital two days for observation and was discharged. Within hours of his discharge, he was readmitted after he began to stutter, had trouble walking, and lost consciousness again.

Dugan was then hospitalized for five days, and more diagnostic tests were performed. A CAT scan, EKG, MRI, and chest x-ray showed no abnormal findings. However, his stuttering and difficulty with walking became more pronounced over time. He was referred to a neurologist, Dr. Brown, and a clinical psychologist, Dr. Back. They agreed that Dugan suffered post-traumatic stress syn-

---

[1] The medical records clearly show that Dugan had an entry port, although the port was stated to be on his *left* hand in one paragraph but on the *right* hand according to a later paragraph in the same admission report authored by Dr. Bryan Abernathy and dictated on September 11, 1993.

drome, a conversion reaction, and possibly depression — all psychological disorders. Both doctors were uncertain whether Dugan's mental problems were caused by an organic source (i.e. a physical injury) or a psychological source. A speech pathologist opined that appellant's stuttering resulted from an organic source. Over time, Dr. Brown and Dr. Back concluded that Dugan's mental illness was the direct result of the electrical shock.

The employer initially deemed Dugan's problems compensable, but later controverted all benefits related to his psychological problems. The administrative law judge found that Dugan's psychological problems were compensable. The Workers' Compensation Commission (the "Commission") reversed, finding that Dugan failed to prove the requisite physical injury to make a mental injury compensable under Ark. Code Ann. § 11-9-113 (Repl. 1996). We disagree and reverse, holding that the Commission erred when it held that Dugan failed to prove that he received a physical injury so that his mental problems were compensable.

■ Workers' compensation appeals are governed by the substantial-evidence standard of review. *Bradley* v. *Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Couch* v. *First State Bank of Newport*, 49 Ark. App. 102, 898 S.W.2d 57 (1995). Where the Workers' Compensation Commission has denied a claim, *"substantial evidence"* requires the appellate court to affirm if the Commission's opinion displays a *substantial basis* for the denial of relief. *Bussell* v. *Georgia-Pacific Corp.*, 48 Ark. App. 131, 891 S.W.2d 75 (1995) (emphasis added).

■ One of the significant changes to the Arkansas Workers' Compensation Law made by Act 796 of 1993 was a new section that defined the compensability of mental injury or illness. Prior to Act 796, workers' compensation benefits were upheld for mental illness in a variety of situations ranging from psychological disorders resulting from traumatic physical injury to nontraumatic experiences involving job stress. *See, e.g., Wilson & Co. Inc.* v. *Christman*, 244 Ark. 132, 424 S.W.2d 863 (1968); *George W. Jackson Mental Health Ctr.* v. *Lambie*, 49 Ark. App. 139, 898 S.W.2d 479 (1995); *City of Fort Smith* v. *Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992); *Boyd* v. *General Indus.*, 22 Ark. App. 103, 733 S.W.2d 750 (1987). Act 796 narrowed the definition of compensable mental illness or injury as follows:

(a)(1) A mental injury or illness is not a compensable injury unless it is caused by *physical injury to the employee's body,* and shall not be considered an injury arising out of and in the course of employment or compensable unless it is demonstrated by a preponderance of the evidence; provided, however, that this physical injury limitation shall not apply to any victim of a crime of violence.

Ark. Code Ann. § 11-9-113(a)(1) (Repl. 1996)(emphasis added). We now must interpret this section and, particularly, the term "physical injury" as it relates to compensable psychological injury. Although we are construing an act of the General Assembly, our jurisdiction is proper under Rule 1-2(a)(3) of the Rules of the Supreme Court.

■ The Commission denied compensation to Dugan because it held that the preponderance of the evidence failed to show "actual demonstrable damage, impairment, wound, or other bodily harm or disorder to the internal or external structure of the body." For this definition of "physical injury," the Commission relied on *Larson's* workers' compensation treatise and other medical and legal dictionaries. The Commission's opinion also imported language from the statutory definition of "compensable injury" which requires medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(5)(D) and (16). We note that Webster's defines injury as simply "harm or damage." *Webster's New World Dictionary and Thesaurus* 320 (1996). "Bodily injury" has been defined as "physical pain, illness or any impairment of physical condition." *Black's Law Dictionary* 786 (6th ed. 1990). One medical dictionary defines injury as "damage or wound or trauma." *Stedman's Medical Dictionary* 786 (25th ed. 1990). Another calls it "a disruption of the integrity or function of a tissue or organ by external means, which are usually mechanical but can also be chemical, electrical, thermal, or radiant." *International Dictionary of Medicine and Biology,* 1443, Vol. II. (1986).

■ The undisputed facts of this case show that Dugan received a 3-4 mm burn (the entry port) to his hand when the shock occurred. That burn is documented in the medical records, and by all accounts was caused by the electrical shock. Hence, it is clear that Dugan received an electrical shock in the course of his employment that produced a physical injury. He suffered a 3-4 mm burn on his hand where the electric current entered his body. Even

if the more elaborate diagnostic tests such as the MRI and the EKG produced no abnormal findings, it is inescapable that he suffered a wound to his hand.

Act 796 clearly shows that proof of a physical injury is now required before a psychological injury can be compensable in Arkansas. Here, we have a physical injury; namely, an observable wound to the external structure of the body. Other jurisdictions with similar statutory requirements have upheld benefits under similar facts. In Connecticut, inappropriate touching was held a sufficient basis for recovery for a mental disorder. *Crochiere* v. *Board of Educ.*, 227 Conn. 333, 630 A.2d 1027 (1993). Although a Florida decision held that mere touching does not suffice, a bite and scratch on the hand of a paramedic was sufficient to support an award of workers' compensation benefits for psychological injury. *City of Hollywood* v. *Karl*, 643 So.2d 34 (Fla. Ct. App. 1994).

■ It is true that Act 796 now requires us to construe the Workers' Compensation Law strictly. Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). However, we find no substantial basis to uphold the denial of benefits to the appellant where the proof of his physical injury is present in the undisputed medical records.

We reverse and remand to the Commission with instructions to enter an award of benefits consistent with this decision.

Reversed and remanded.

ROBBINS and STROUD, JJ., agree.