Tommy JOHNSON *v.* DEMOCRAT PRINTING and
LITHOGRAPH

CA 96–915                                   944 S.W.2d 138

Court of Appeals of Arkansas
Division IV
Opinion delivered May 14, 1997

*The Cortinez Law Firm, P.A.*, by: *Robert S. Tschiemer*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Michael J. Emerson* and *Derek J. Edwards*, for appellee.

ANDREE LAYTON ROAF, Judge. This is an appeal from a decision of the Arkansas Workers' Compensation Commission finding that the appellant, Tommy Johnson, failed to prove that he suffered a compensable injury from exposure to toxic chemicals during his employment with the appellee, Democrat Printing and Lithograph. Johnson alleges that the Commission applied the wrong standard of proof in determining that his claim was for an occupational disease, and, accordingly, requiring him to prove compensability by clear and convincing evidence. He also asserts that there was not substantial evidence to uphold the decision of the Commission. We disagree and affirm.

Tommy Johnson was employed by Democrat Printing in 1976, and began working as a folder-machine operator in 1977. In the course of his employment, he was required to use certain chemical cleansing agents. An expert presented by Democrat Printing noted that the chemicals were within a classification of petroleum products or derivatives or halogenated hydrocarbons. Johnson testified that he had to use the chemicals to clean the rubber rollers on the folder machine and that the room in which he worked was poorly ventilated.

In 1988, Johnson blacked out at work and thereafter saw the company doctor. The doctor told Johnson that the chemicals would not hurt him and that the blackout was probably caused by

an allergic reaction to the chemicals. Johnson testified that he began to see doctors regularly after this incident because he was suffering from headaches, sinus problems, stomach problems, and physical and mental breakdowns. Johnson claimed that his problems gradually worsened.

Johnson was hospitalized for alcohol treatment in May 1993, after a one-week drinking binge. Johnson testified that he was a "social drinker" and that he had never had any other problems with alcohol. He attributed his drinking binge to the fact that he was having headaches and the alcohol helped him sleep. His wife testified that she attributed the binge to the fact that they were separated for a short time. She stated that she had called her insurance company (through her job at the post office) to get help for Johnson, and that they had admitted Johnson to a rehabilitation program in Louisiana from May 28, 1993, to June 5, 1993. He was discharged with a diagnosis of alcohol abuse, acute major depression, and personality disorder with dependent and antisocial features.

Johnson has not worked since May 20, 1993. He testified that he has had seizures where he would "go berserk and do things [he does] not remember doing. At times [he] would jump into the truck and go from here to Wichita, or wherever." Johnson related to a neurologist that sometimes the "seizures" would last a few seconds and up to days. In August 1993, Johnson sought treatment from Dr. Shinder, a neurologist. Dr. Shinder put him on Dilantin and Paxil and treated him for demyelinating disease and brain damage. Johnson also began to see Joe Brogdon, a psychological examiner, for treatment of his emotional problems.

Johnson had an MRI and two EEGs in 1993 and early 1994 that were normal. Johnson was then referred to Dr. Victor Biton, a board-certified neurologist, for an independent medical evaluation. Dr. Biton noted that Johnson's description of his symptoms was vague and that Johnson responded positively to almost every single symptom that he was questioned about. Dr. Biton initially concluded that Johnson's complaints were not supported by any lab tests. Dr. Biton, however, recommended a comprehensive evaluation to determine if any of Johnson's symptoms were of an

"organic etiology." After extensive testing, which included a 24-hour-a- day monitoring for seven days for abnormal brain activity, he found no evidence of significant damage or seizures. The testing found one "very mild abnormality . . .[which] might be attributed to previous brain damage which can possibly include alcohol and drug abuse that the patient had." Other doctors involved in the testing of Johnson, Dr. Hazelwood and Dr. Hewitt, attributed much of the findings of the tests to Johnson's limited motivation. Only Dr. Shinder diagnosed Johnson with a disease (or injury) that was connected to Johnson's exposure to the chemicals.

The administrative law judge ("ALJ") found that Johnson was complaining of an occupational disease and that the applicable standard of proof was clear and convincing evidence. The ALJ based this decision on the pre-1976 schedule of compensable occupational diseases and the presumption that conditions allegedly caused by the exposure to certain substances were to be handled as occupational diseases. In addition, the ALJ also relied upon the fact that Johnson claimed that his symptoms were gradual rather than sudden. Based on a finding that the medical evidence presented by the employer was far more credible and persuasive, the ALJ found that Johnson had not met his burden of proof and that his claim was, therefore, denied. Johnson appealed to the full Commission. The Commission adopted the findings and decision of the ALJ.

Johnson argues that the Commission was in error to apply the clear and convincing evidence standard to his claim as it was not an occupational disease. We cannot agree. He further argues that there was insufficient evidence to support the decision below. Again, we find no merit to his argument.

### 1.   Occupational disease

■    Arkansas Code Annotated § 11-9-601(e)(1) (Repl. 1996) defines "occupational disease" as *any* disease resulting in death or disability that arises out of or in the course of the occupation, or naturally follows from an injury. (Emphasis added.) Although the Act does not define the distinction between "acci-

dental injury" and "disease," one widely accepted and salient distinction is that occupational diseases are generally gradual rather than sudden in onset. *Hancock v. Modern Indus. Laundry*, 46 Ark. App. 186, 878 S.W.2d 416 (1994); *See also*, 1B Arthur Larson, Workmens' Compensation Law 41.31 (1992).

■ The characterization that a claim is for an occupational disease is significant in that the claimant's burden of proof is affected. If the claimant's condition is an "injury," he has the burden of proving that it arose out of and in the course of his employment by a preponderance of the evidence. *See* Ark. Code Ann. § 11-9-704(c)(2) (Repl. 1996). On the other hand, if his or her condition is an "occupational disease," a causal connection between the employment and the disease must be established by clear and convincing evidence. Ark. Code Ann. § 11-9-601(e)(1). *Tyson Foods, Inc. v. Watkins*, 31 Ark. App. 230, 792 S.W.2d 348 (1990).

■ As previously noted, "occupational disease" is now defined as "any disease that results in disability or death and arises out of and in the course of the occupation or employment of the employee, or naturally follows or unavoidably results from an injury." Ark. Code Ann. § 11-9-601(e)(1). Only silicosis and asbestosis are dealt with separately. Ark. Code Ann. § 11-9-602 (Repl. 1996). Prior to 1976, the legislature listed a schedule of occupational diseases. *See* Ark. Stat. Ann. § 81-1314 (Repl. 1960). The employer contends that petroleum products and halogenated hydrocarbons were listed under the old schedule of occupational diseases, and that conditions allegedly resulting from exposure to these chemicals should be considered an occupational disease. In support of this argument is R. B. Leflar, *Compensation for Work Related Illness in Arkansas*, 41 ARK. L. REV. 89 (1988):

> One can . . . conclude without undue difficulty that diseases listed on the pre-1976 schedule should continue, for the present, to be analyzed under section 14 [occupational disease] standards. When the legislature repealed the schedule, presumably it intended that conditions previously covered by section 14 should remain in the same status, at least in the absence of evidence supporting a change of treatment. In keeping with this reasoning, the Court of Appeals has recognized that cases of tenosynovitis

(inflammation of a tendon sheath), a condition listed on the old schedule, should be decided under section 14.

Leflar, *supra* at 99. The presumption should be that conditions on the pre-1976 schedule of compensable occupational diseases are still to be treated as such, although the Commission is not required to do so since the schedule has been repealed. *Tyson Foods, Inc. v. Watkins*, 31 Ark. App. 230, 792 S.W.2d 348 (1990) (citing Leflar, *supra* at 118-120).

■ In this instance, we agree with the Commission's finding that Johnson's claim was for an occupational disease and not an injury. Johnson did not allege that his condition occurred at a single, specific point in time, but rather testified that his symptoms were gradual in nature. Johnson also did not contest that the products from which he claimed exposure were petroleum products or halogenated hydrocarbons included on the pre-1976 list. We cannot say that the Commission was in error to conclude that Johnson complained of an occupational disease and that his claim was then subject to a higher standard of proof.

### 2. Substantial evidence

■ Workers' compensation appeals are governed by the substantial evidence standard of review. *Dugan v. Jerry Sweetser, Inc.*, 54 Ark. App. 401, 403, 928 S.W.2d 341 (1996); *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995). When reviewing decisions from the Workers' Compensation Commission, the court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Crawford v. Pace Indus.*, 55 Ark. App. 60, 929 S.W.2d 727 (1996) (citing *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992)). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Crawford, supra* (citing *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992)); *See also, Couch v. First Nat'l Bank of Newport*, 49 Ark. App. 102, 898 S.W.2d 57 (1995). A decision by the Workers' Compensation Commission should not be reversed unless it is

clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Crawford, supra* (citing *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983)). Where the Workers' Compensation Commission has denied a claim, "substantial evidence" requires the appellate court to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Bussell v. Georgia-Pacific Corp.*, 48 Ark. App. 131, 891 S.W.2d 75 (1995).

In the present case, there was testimony and evidence received from three physicians and a psychologist regarding Johnson's condition and prognosis. Of those four, only one (Dr. Shinder) found Johnson's alleged symptoms to be caused by his exposure to the chemicals. The other three (Drs. Biton, Hewitt, and Hazelwood) found that Johnson's symptoms were undocumented and unrelated to chemical exposure in the workplace. Johnson also testified as to his symptoms and inability to work. He argues that Dr. Shinder's testimony should be given more weight because he was the physician with whom he had the most contact.

It is well established that the credibility of witnesses and the weight to be given to their testimony are matters exclusively within the province of the Commission. *Wade v. Mr. C. Cavenaugh's*, 298 Ark. 363, 768 S.W.2d 521 (1989); *James River Corp. v. Walters*, 53 Ark. App. 59, 918 S.W.2d 211 (1996). The Commission has the duty of weighing medical evidence as it does any other evidence, and the resolution of any conflicts in the medical evidence is a question of fact for the Commission. *Foxx v. American Transp.*, 54 Ark. App. 115, 924 S.W.2d 814 (1996); *Barnard v. B & M Constr.*, 52 Ark. App. 61, 915 S.W.2d 296 (1996); *Brantley v. Tyson Foods, Inc.*, 48 Ark. App. 27, 888 S.W.2d 543 (1994); *Bartlett v. Mead Containerboard*, 47 Ark. App. 181, 888 S.W.2d 314 (1994). The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Jackson v. Circle T. Express*, 49 Ark. App. 94, 896 S.W.2d 602 (1995).

■ Moreover, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Stafford v. ArkMo Lumber Co.*, 54 Ark. App. 286, 925 S.W.2d 170 (1996); *McClain v. Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989).

■ Based on the evidence before the Commission, we cannot conclude that there was insufficient evidence to support this decision.

Affirmed.

GRIFFEN and CRABTREE, JJ., agree.