## OAK GROVE LUMBER COMPANY *v.* Harry HIGHFILL

CA 97–1075                                         968 S.W.2d 637

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered May 6, 1998

Reid, Burge, Prevallet & Coleman, by: Richard A. Reid, for appellant.

Bartels Law Firm, by: Anthony W. Bartels, for appellee.

D. FRANKLIN AREY, III, Judge. The Workers' Compensation Commission found that appellee Harry Highfill's second foot injury was a compensable consequence of his initial work-related injury. Appellee sustained his second injury when he stepped on, or tripped over, a tree root while walking through a park; he was in the park attending a church activity. The appellant, Oak Grove Lumber Company, argues that the Commission's decision is not supported by substantial evidence and is erroneous as a matter of law. We affirm.

On June 16, 1995, appellee dropped a sledgehammer on his right foot while working for appellant. Appellee saw a nurse practitioner, who determined that appellee sustained a nondisplaced fracture. She treated appellee and instructed him to wear protective boots when he returned to work. Appellee returned to work for a few days.

On June 22, 1995, appellee attended a church function in a city park. While walking through the park, appellee either stepped on or tripped over a tree root. In his words, "something happened" to his foot; the incident "bent my toes back and it just went ahead and broke."

Appellee saw Dr. R. Cagle, who diagnosed an angular fracture of the second metatarsal with some dorsal displacement. Dr. Cagle referred appellee to Dr. Marion Hazzard, who performed an operation on appellee's foot on June 28, 1995. On January 26, 1996, the plates were removed from his foot and he was released on February 12, 1996, to resume normal activities.

In a January 16, 1996 medical report, Dr. Hazzard stated that he believed that appellee's displaced fracture was a direct result of his initial injury with the sledgehammer, as a fracture was reported after that incident. He stated that weakening of the bone secondary to the first trauma was a contributing factor to the subsequent displaced fracture. However, at his deposition, Dr. Hazzard testified that he was not saying that the displaced fracture was a natural consequence of the first fracture; he agreed that the second fracture did not follow as a natural progression in the course of events. Dr. Hazzard did believe that a previous fracture would certainly increase the probability of a displaced fracture occurring.

After reviewing Dr. Hazzard's deposition, the Commission was persuaded that his acknowledgment regarding the "natural consequence" of appellee's first fracture simply meant that appellee was not destined to sustain a major fracture owing to the presence of a minor one. Relying on Dr. Hazzard's opinion of January 16, 1996, other testimony from his deposition, and the close temporal relationship between appellee's two fractures, the Commission concluded that appellee's accident would not have caused the displaced right foot fracture had it not been for the previous injury of June 16, 1995. Thus, the Commission concluded that it was unable to find that appellee's injury of June 22, 1995, occurred as a result of an independent intervening cause.

Appellant argues that the Commission's decision is erroneous as a matter of law. Relying on Arkansas Code Annotated section 11-9-102(5)(F)(iii) (Supp. 1997), appellant argues that appellee's

second injury was a nonwork-related independent intervening cause, thereby precluding the payment of benefits. That section provides:

> Under this subdivision. . ., benefits shall not be payable for a condition which results from a nonwork-related independent intervening cause following a compensable injury which causes or prolongs disability or a need for treatment. A nonwork-related independent intervening cause does not require negligence or recklessness on the part of the claimant.

Ark. Code Ann. § 11-9-102(5)(F)(iii). In effect, appellant argues that the Commission should have found appellee's second injury to be a nonwork-related independent intervening cause as a matter of law.

█ Appellant's argument ignores the Commission's role as a fact finder. As a general matter, the determination of whether there is a causal connection between the injury and the disability is a question of fact for the Commission to determine. *See Carter v. Flintrol, Inc.*, 19 Ark. App. 317, 720 S.W.2d 337 (1986). Likewise, our prior decisions indicate that the determination of the existence of an independent intervening cause is a question of fact for the Commission to determine. *See Broadway v. B.A.S.S.*, 41 Ark. App. 111, 848 S.W.2d 445 (1993); *Lunsford v. Rich Mountain Elec. Coop.*, 38 Ark. App. 188, 832 S.W.2d 291 (1992)(reversing the Commission's finding of the existence of an independent intervening cause for lack of substantial evidence). Thus, the question of whether appellee's second injury was a nonwork-related independent intervening cause was not to be determined as a matter of law; rather, it was a question of fact for the Commission's determination. Therefore, we reject appellant's argument that the Commission erred as a matter of law.[1]

---

[1] The dissent rests on Ark. Code Ann. § 11-9-102(5)(B)(ii) and (iii)(Supp. 1997). There is no indication in the Commission's opinion that these subsections were argued to the Commission. Indeed, appellant's argument was summarized in the opinion as follows:
> Respondents now appeal from [the ALJ's] opinion and order, contending that claimant's June 22, 1995, foot injury is the result of an independent intervening cause and is not a compensable consequence of his work-related injury.

Because appellant failed to raise an argument based upon § 11-9-102(5)(B)(ii) and (iii) below, we decline to address it here. *See Couch v. First State Bank of Newport*, 49 Ark. App.

Appellant also argues that the Commission's opinion is not supported by substantial evidence. Appellant focuses on Dr. Hazzard's testimony that the displaced fracture was not a natural consequence of the first fracture. Appellant complains that the Commission gave its own interpretation of the doctor's testimony, rather than giving the testimony its "plain and clear meaning."

■■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Broadway*, 41 Ark. App. at 113–14, 848 S.W.2d at 447. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even where a preponderance of the evidence might indicate a contrary result we will affirm if reasonable minds could reach the Commission's conclusion. *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

■ It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Marrable v. Southern LP Gas, Inc.*, 25 Ark. App. 1, 751 S.W.2d 15 (1988). The Commission has a duty to use its experience and expertise in translating the testimony of medical experts into findings of fact. *Id.* It is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted; and when it does so, its findings have the force and effect of a jury verdict. *Id.*; *see Johnson v. Democrat Printing & Lithograph*, 57 Ark. App. 274, 944 S.W.2d 138 (1997).

■ While Dr. Hazzard did confirm that he was not saying that appellee's displaced fracture was a "natural consequence" of

---

102, 898 S.W.2d 57 (1995). Even if the Commission's opinion could somehow be read to indicate that an argument based upon this statute was raised, the opinion contains no ruling concerning this statute. It was the appellant's responsibility to obtain a ruling; a question not passed upon below presents no question for decision here. *See W.W.C. Bingo v. Zwierzynski*, 53 Ark. App. 288, 921 S.W.2d 954 (1996).

his first fracture, other parts of his deposition testimony and his report of January 16, 1996, support the Commission's determination. The Commission was certainly empowered to draw inferences from Dr. Hazzard's testimony, and it did so. In this instance, the Commission's decision is supported by substantial evidence.

Affirmed.

NEAL, MEADS, and ROAF, JJ., agree.

GRIFFEN and BIRD, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. The result in this appeal mocks Arkansas Code Annotated § 11-9-102(5)(B)(ii) and (iii) (Supp. 1997) and the plain expression of public policy that a "compensable injury" does not include:

> (ii)   Injury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities for the employee's personal pleasure;

> (iii)   Injury which was inflicted upon the employee at a time when employment services were not being performed, or before the employee was hired or after the employment relationship was terminated.

Harry Highfill worked for Oak Grove Lumber Company near Rector. On June 16, 1995, he struck his right foot with a sledge hammer at work. A nurse practitioner treated his injury, which she diagnosed as a nondisplaced fracture of the right foot. Highfill returned to work soon after the incident. After working a few days he took off to attend a church outing at the Rector town park. While on that outing, on or about June 22, 1995, Highfill walked or tripped on a tree root. He felt something pop and immediately experienced severe pain in the right foot that was more severe than anything he suffered when he had the work injury several days earlier. He returned to the nurse practitioner, saw another doctor, and was eventually referred to Dr. Marion P. Hazzard, an orthopedic surgeon practicing in Paragould, who ordered X-rays that revealed a displaced fracture of the second metatarsal of the right foot.

Dr. Hazzard testified by deposition that in a letter dated January 16, 1996, he had opined that the initial trauma when Highfill struck his right foot with the sledge hammer at work on June 16, 1995, was

> [a] contributing factor to the subsequent displaced fracture of the second right metatarsal. . . . I'm not saying then that it was a natural consequence or the displaced fracture was a natural consequence of the first fracture. It's correct that the second fracture just doesn't follow as a natural progression in the course of events. He worked and nothing happened when he walked on level ground. . . . It is correct and fair to say that the disability and the need for the two surgeries was actually the displaced fracture which followed the event in the park. The major cause of the disability rating, the 20% of the right second toe or 1% of the foot, and the additional need for treatment was the displaced fracture for which I treated him.

Dr. Hazzard performed surgery on Highfill's right foot to repair the fracture. A second surgery was required to remove the plates that were placed in the foot during the first surgery. Highfill missed about two months from work, and filed a claim for temporary total disability benefits, the expenses associated with Dr. Hazzard's treatment, and the permanent anatomical impairment to his foot assessed by Dr. Hazzard. Despite this undisputed proof and the crystal clear wording of § 11-9-102(5)(B)(ii) and (iii), the majority now holds that the Commission properly held the employer responsible for the consequences of Highfill's church-outing mishap.

The majority has decided to affirm the Commission by holding that Highfill's June 22, 1995, tree-root incident while walking through the city park was an independent intervening cause. They reason that this was a question of fact within the Commission's exclusive province to resolve, and that its decision is supported by substantial evidence, notwithstanding Dr. Hazzard's testimony. However, the Commission should be reversed as a matter of law.

This case does not involve a question of fact because no facts are disputed. There is no dispute about the facts surrounding Highfill's injury from dropping a sledgehammer on his right foot

while working for appellant on June 16, 1995. It is undisputed that Highfill sustained a nondisplaced fracture from that incident, that he required no surgery for that fracture, and that he missed little or no work because of it. Highfill testified that his pain drastically increased following the June 22 tripping incident involving the tree root while on the church outing. Dr. Hazzard testified that the June 22 incident was the major cause of the displaced fracture, the need for surgical repair, and the resultant disability. There was no issue of fact; rather, the issue is whether Highfill sustained a "compensable injury" as a matter of law in view of the undisputed facts.

Before July 1, 1993, when the General Assembly mandated that injuries arising out of occurrences such as Highfill's church outing are not compensable, this case would have been determined by the principle of law set forth in *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). The pertinent language from that opinion states:

> We conclude that in all our cases in which a second period of medical complications follows an acknowledged compensable injury we have applied the test. . .that where the second complication is found to be a *natural and probable result of the first injury, the employer remains liable for it. Only where it is found that the second episode has resulted from an independent intervening cause is that liability affected.* . . . We further conclude that in all our cases the test was and is the same: Is the second episode a natural and probable result of the first injury or was it precipitated by an independent intervening cause.

> The use of these different words descriptive of the rule being applied is best explained by the history of the development of our case law in this area, which has been derived largely from Larson's treatise on workmen's compensation. Larson places the "second medical complication" cases in two logical groups — those in which the second episode manifests itself in a non-industrial setting and those in which it arises in the course of employment. This is appropriate because of the different effect the claimant's own conduct may have on the employer's continued liability.

*Id.* at 71-72 (emphasis added) (citations omitted). Under the law before the General Assembly enacted Act 796 of 1993 and added

the previously referenced statutes to the workers' compensation law, an employer was forced to prove that the second episode resulted from what the *Bearden Lumber* opinion termed "non work-related negligent conduct on the part of the claimant which effects an independent intervening cause."

Even under the prior law, the Commission's decision is flawed. Under the *Bearden Lumber* analytical framework, the controlling inquiry is whether the June 22 tree root incident was a natural and probable result of the June 16 incident with the sledgehammer. However, the majority and Commission have adopted the manifestly absurd conclusion from Dr. Hazzard that the displaced fracture caused by the tripping incident was a direct result of the nondisplaced fracture that was caused by the sledgehammer even though Dr. Hazzard admitted that the displaced fracture did not follow as a natural progression from the nondisplaced fracture. The Commission, in wording that is nothing but fanciful, concluded that Dr. Hazzard's testimony meant that High-fill was not "destined" to sustain the displaced fracture because of the nondisplaced fracture.

Subsections (ii) and (iii) of § 11-9-102(5)(B) are clear statements of public policy against including tripping incidents while on church outings unrelated to the employment, from the definition of what is a "compensable injury." In other words, the 1993 changes to the workers' compensation law were obviously meant to do away with questions about concurrent or independent causation as well as whether a worker was negligent when a work-related condition is alleged to have precipitated a subsequent injury that occurs outside the work environment.

Thus, both the *Bearden Lumber* principle and the statutes enacted by the General Assembly in 1993 have been disregarded by the holding in this case. According to the decision rendered today, an employer's liability for a subsequent injury following a compensable injury now depends on whether the first injury "destined" the worker to suffer the subsequent injury. If so (by whatever fanciful thought process employed by the decision maker), the employer is liable *even if the injury occurred while the*

*employee engaged in the very conduct that the statute expressly does not cover.*

Instead of focusing on whether the church-outing tripping incident that resulted in the injury treated by Dr. Hazzard occurred while Highfill was engaged in or performed recreational or social activities for his personal pleasure (§ 11-9-102(5)(B)(ii)) or occurred at a time when employment services were not being performed (§ 11-9-102(5)(B)(iii)), the Commission disregarded the statute altogether, along with the employer's defense based on it. The Commission, Highfill, and the majority do not explain how or why this tortured analysis is consistent with a statute that practically reads, "Thou shalt not deem 'compensable' injuries that occur while people are engaging in personal leisure, recreational, or social activities, or that occur when people are not performing employment services." The majority opinion does not indicate what made the church outing anything other than an activity for Highfill's personal leisure, recreation, or social pleasure. There is no evidence that Highfill was performing employment services when he tripped or walked over a tree root in the Rector town park while on the church outing. One searches in vain for clues about how Highfill's nondisplaced fracture turned into a displaced fracture apart from the June 22, 1995, incident at the church outing.

Only last year, this court held that an employee is not entitled to compensation for slipping and falling on ice in the employer's parking lot while walking into the workplace from a car. *Hightower v. Newark Pub. Sch. Sys.*, 57 Ark. App. 159, 943 S.W.2d 608 (1997). Two years ago, we held that "performing employment services" means the performance of those functions which are essential to the success of the enterprise in which the employer is engaged. *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1996), *aff'd* 328 Ark. 381, 944 S.W.2d 524 (1997). Highfill produced no proof whatsoever showing how tripping over a tree root while walking on a church outing in a public park was essential to his employer's business. The majority cannot wish away these recent decisions and the plain wording of the statute simply by adopting the Commission's ridiculous con-

clusion that Highfill's first injury "destined" him to suffer the second.

One can now understand why the General Assembly was blunt about the intent for the 1993 amendments to the workers compensation law at Arkansas Code Annotated § 11-9-1001 (Repl. 1996), when it wrote:

> The Seventy-Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. *Unfortunately, many of the changes made by this act* [Act 796 of 1993] *were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state. . . . When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges the responsibility to do so. . . . In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.* (Emphasis added.)

This decision will be a leading exhibit at future legislative sessions to show what the General Assembly intended to avoid when it included § 11-9-1001 because it shows what judicial legislating in the workers' compensation context looks like and how determined the Commission and courts can be about ignoring duly enacted workers' compensation legislation. It is amazing, but hardly amusing, that this clear expression of public policy by a super-majority of the General Assembly is so brazenly disregarded, and during the first generation of cases to boot. Our job is to apply the law that the General Assembly enacts, not thumb our noses at it and dream up outrageous results bottomed on specious reasoning.

Hopefully, appellant will petition the supreme court to review this misguided decision. Meanwhile, I dissent.

BIRD, J., agrees.